IN THE UNTIED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BEN GORDON, G7, INC., and BG4, INC. )
)
     Plaintiff, )
)
vs. )
)
VITALIS PARTNERS, LLC; LARRY )
HARMON & ASSOCIATES, P.A.; KCDD )    No.  07 C 6807
DEVELOPMENTS, LLC; LARRY )
HARMON; and KENNY CRUZ )
)
     Defendants. )

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS BASED UPON ALLEGED LACK OF PERSONAL JURISDICTION

Plaintiffs, BEN GORDON, G7, INC. and BG4, Inc. (collectively, "Gordon"), by and through their attorneys, SPELLMIRE & SOMMER, submit this Response in Opposition to Defendants' Motion to Dismiss Based Upon *Alleged* Lack of Personal Jurisdiction.

### I.    INTORDUCTION

This Court's preliminary conclusion that there is "sufficient entanglement" between all of the Defendants and the state of Illinois so as to confer personal jurisdiction over all of the Defendants was correct and consistent with applicable law.  Simply put, the Defendants' specious position that an individual's long-term financial advisor, his companies and his business associates/partners can reach out to an Illinois resident, solicit $1,000,000 from him and then contractually agree to pay back $1.35 million over the next two years, can somehow escape this Court's jurisdiction is directly contrary to settled law.

The Defendants largely miss the point as they argue that Gordon's Complaint does not sufficiently allege that a tort was committed in Illinois and state that Gordon suffered only

economic harm. However, the Defendants completely ignore the well-established body of law which stands for the proposition that an out of state defendant submits himself to the jurisdiction of Illinois courts by reaching out to and entering into a contractual relationship with an Illinois resident wherein the contract creates an ongoing obligation to repay money to that Illinois resident. Here, the Defendants actively solicited Gordon to give them $1,000,000 to invest in a real estate deal and then contractually bound themselves to repay Gordon, who was at all times a resident of Illinois, a sum of $1.35 million over a twenty-four month period.

When the well-pled facts and exhibits contained in and attached to Gordon's Complaint are considered, it is clear that this Court has personal jurisdiction over all of the Defendants as the Defendants have purposely reached out to an Illinois resident (Gordon) and created an ongoing contractual obligation to pay Gordon back a large sum of money.

## II.    RELEVANT FACTS AND ALLEGATIONS

These facts and allegations are gleaned from Gordon's Complaint and Exhibits A and B attached thereto or are otherwise publicly known facts about Mr. Gordon's NBA career. (Complaint, attached as Exhibit 1).

Defendant Larry Harmon ("Harmon") is an individual and is the owner and registered agent of Defendant Larry Harmon & Associates P.A. Defendant Kenny Cruz ("Cruz") is an individual and is the owner and registered agent of KC Developments, LLC ("KCD"). Cruz and Harmon are frequent business partners/associates and are the sole shareholders of Defendant Vitalis, LLC ("Vitalis"). Further, Vitalis' only partners are KCD and Larry Harmon & Associates. (Ex. 1, ¶¶ 6-10).

On May 17, 2004 Gordon executed a "Consulting Agreement" with Harmon and Larry Harmon & Associates (the "Harmon Defendants"), wherein the Harmon Defendants agreed to

act as Gordon's financial fiduciary and provide Gordon with "detailed financial and tax consulting services for the duration of [his] playing career in the National Basketball Association." (Ex. 1, ¶ 11 and Ex. A). The Consulting Agreement also provides that the Harmon Defendants had the "intent of being involved in every financial decision with [Mr. Gordon] so that [they] can appropriately gain any tax and/or financial advantages or savings on such expenditure or purchase." (Ex. 1, ¶ 12 and Ex. A). (Emphasis supplied).

On June 24, 2004, one month after Gordon and the Harmon Defendants entered into the Consulting Agreement, the Chicago Bulls drafted Ben Gordon with the third-pick in the 2004 NBA draft. Since that time and commencing with the 2004-2005 NBA basketball season, Gordon has been a player for the Chicago Bulls and has been a resident of Cook County, Illinois. Ex. 1, ¶¶ 2, 15). Since May 17, 2004 and until and including the first half of 2007, the Harmon Defendants acted as Gordon's financial fiduciary, tax and investment advisor and often traveled to Chicago, Illinois to meet with Mr. Gordon to discuss certain investment opportunities, Gordon's financial status and the fee arrangement between Gordon and the Harmon Defendants. (Ex. 1, ¶ 16). Further, Harmon often contacted Gordon via telephone and e-mail to discuss his finances and investment opportunities. Gordon's paychecks from the Chicago Bulls were directly wired into accounts controlled by the Harmon Defendants. (Ex. 1, ¶ 16).

Sometime in or around August of 2006, Harmon contacted Gordon for the purpose of soliciting him to invest $1,000,000 into a California real estate investment. After Harmon's numerous contacts with Gordon for the purpose of discussing and promoting the proposed investment, Gordon agreed to allow Harmon to invest the $1,000,000 on his behalf. (Ex. 1, ¶ 17).

After Gordon became uncomfortable with the fees that the Harmon Defendants were charging him for their services, Gordon decided to terminate his relationship with the Harmon Defendants. At that time, and in the process of transferring control of Gordon's assets and funds to a new financial advisor, Gordon discovered that his investment into the real estate deal was actually structured and documented as a loan to the Harmon Defendants and Harmon's frequent business associate/partner, Cruz and two of Cruz and Harmon's companies, Vitalis Partners and KCD. Further, Gordon discovered a Promissory Note contract wherein all of the Defendants jointly and severally promised to repay Gordon $1,350,000 over a two year period to cover the $1,000,000 loan and the contractual interest. (Ex. 1, ¶¶ 21-25, and Ex. B).

At or around the same time, Gordon also discovered that none of the Defendants had been making the required $4,167 monthly interest payments under the Promissory Note. Accordingly, on July 31, 2007, Gordon exercised his rights under the lender's rights and default provisions of the Promissory Note and demanded the repayment of the $1,000,000, as well as all accrued interests and late fees. (Ex. 1, ¶ 35). To date, the Defendants have refused to repay Gordon the $1,000,000 and all required fees. (Ex. 1, ¶ 37).

## III. THIS COURT HAS PERSONAL JURISDICTION OVER ALL OF THE DEFENDANTS.

Under the [federal] Due Process Clause, a court may exercise personal jurisdiction over a nonresident defendant if, given the contact with the forum state, that exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945). To determine if the Due Process clause is satisfied, the first question a Court must answer is whether the defendant or defendants have

4

established 'minimum contacts' in the forum state. *Burger King Corp. v. Rudzewicz*, 571 U.S. 462, 474 (1985).[1]

In determining if the minimum contacts requirement is met, the Supreme Court derived a distinction between "general personal jurisdiction" and "specific personal jurisdiction." *See. e.g. Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). For general personal jurisdiction to exist, the defendant's conduct at issue need not form the basis for personal jurisdiction, but rather it is the defendant's regular and purposeful contacts with the forum which confer jurisdiction. *Helicopteros*, at 416. In analyzing whether general jurisdiction exists, courts are to examine certain factors including whether the defendant regularly conducts business in the state or with a resident of the state, whether the defendant regularly sends an agent to conduct business in the forum state and whether the defendant solicits business in the forum state. *Interlease Aviation Investors II (Aloha) LLC v. Vanguard Airlines, Inc.*, 262 F.Supp.2d 898, 906-907 (N.D. Ill. 2003). Courts analyzing whether personal jurisdiction (general or specific) exists are also to ask the common sense inquiry of whether, due to the defendants contacts with the state, he could reasonable expect to be "hauled into court" in that state. *Worldtronics Int'l v. Ever Splendor Enter. Co.*, 969 F.Supp. 1136, 1139 (N.D. Ill. 1997).

If general jurisdiction is not satisfied, the court is then to analyze whether specific personal jurisdiction exits, meaning that the lawsuit or controversy at issue must be "related to or [arise] out of defendant's contact with the forum." *Helicopteros*, 466 U.S. at 414. Although this

---

[1] As the Defendants correctly point out in their Motion, there is now no difference "between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002); (Def. Mot., pg. 4). In 1989, the Illinois legislature amended the Illinois Long Arm Statute to become harmonious with the federal court requirements for personal jurisdiction and extended the reach of the Illinois statute to the limits of the U.S. Constitutional limits. 705 ILCS § 2-209 (West. 2006). Accordingly, because the Illinois statute authorizes jurisdiction to Constitutional limits, this Court need only consider the due process inquiry, and not whether the Defendant engaged in any of the specific enumerated acts found in the Illinois Long Arm Statute. *Kostal v. Pinkus Dermatopathology Lab., P.C.*, 357 Ill.App.3d 381 (1st Dist. 2005); *LFG, LLC v. Zapata Corp.*, 78 F.Supp.2d 731, 735 (N.D.Ill. 1999).

Court need not determine that the Defendants here engaged in a specific act that confers specific personal jurisdiction under the Illinois Long Arm Statute to find that due process has been satisfied (*See*, FN 1 herein), two specific acts enumerated by the statute are of particular relevance to this case. The Illinois Long Arm statute provides in relevant part:

Act submitting to jurisdiction—Process.

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person and if an individual, his or her representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

    (1) The transaction of any business within the state;

    (7) The making or performance of any contract or promise substantially connected with this state.

(c) A court may also exercise jurisdiction on any other basis now or hereinafter permitted by the Illinois Constitution and the Constitution of the United States.

735 ILCS § 5/2-209(a) and (c) (West 2006).

## A. This Court has "General" Personal Jurisdiction over the Harmon Defendants.

This point deserves little attention, as it is clear that this Court has "general" personal jurisdiction over the Harmon Defendants. As is evidenced by the Consulting Agreement and additional allegations in the Complaint, for nearly three years, the Harmon Defendants continually acted as Gordon's financial agent, money manager and investment advisor. As the Consulting Agreement contemplated, the Harmon Defendants provided Gordon with "detailed financial and tax consulting services" and were "*involved in every financial decision with [Mr. Gordon]*" from the time the Consulting Agreement was executed in 2004 until the time the relationship was severed in 2007. During that time period, Gordon was (and still is) a resident of

Illinois and a member of the Chicago Bulls basketball team and the Harmon Defendants regularly called and e-mailed Gordon and traveled to Chicago to discuss his finances and investments.

It borders on the ridiculous for the Harmon Defendants to argue that they can reach out to a professional basketball player and public figure who lives and works in Illinois and for three years act as his financial fiduciary, investment advisor and money manger to the point of receiving his pay checks, controlling his bank accounts, and making frequent trips to Chicago to conduct Gordon's business, and them claim that a court sitting in Illinois cannot exercise personal jurisdiction over them. Simply put, the Harmon Defendants purposely reached out to Gordon, an Illinois resident, and solicited an ongoing, continuous and close fiduciary relationship which required that the Harmon Defendants have regular and systematic contacts with Gordon for the purpose of carrying out his financial business. This is the essence of contacts sufficient to confer "general personal jurisdiction" under settled law. *See, Helicopteros*, 466 U.S. at 414.

In sum, this Court need not even look past the common sense inquiry of whether the Harmon Defendants could reasonably be expected to be "hauled into court" by Gordon in Illinois if a dispute concerning their long-term business relationship ever arose to determine that general personal jurisdiction exists over the Harmon Defendants. The answer to this simple inquiry is of course "yes." Accordingly, this Court has "general" personal jurisdiction over the Harmon Defendants.

**B.**     **Specific Personal Jurisdiction Exists Over all of the Defendants**

All of the Defendants, including the Harmon Defendants, Cruz, Vitalis and KCD, submitted to the jurisdiction of a court sitting within the state of Illinois by agreeing to the

"making or performance of a contract . . . substantially connected with [Illinois]", as this case involves the failure to pay an Illinois resident in breach of a promissory note contract. § 2-209(a)(7); (Exhibit 1). Numerous cases from both Illinois courts and the Seventh Circuit make clear that the Defendant's <u>conscious decision</u> to reach out to an Illinois resident for the purpose of borrowing a large sum of money and then contractually agreeing to create a continuous and ongoing responsibility to pay back the money to the Illinois resident over time is sufficient to confer "specific personal jurisdiction" over the Defendants.

In *Kalata v. Healy*, 312 Ill.App.3d 761 (1st Dist 2000), a breach of contract case, the court held that personal jurisdiction existed over the defendant, <u>a California resident,</u> because the Defendant reached out to an Illinois resident to solicit $100,000 for the entry into a contractual joint-venture which included the purchase of California real estate. The plaintiff's breach of contract action brought in Illinois sought to recover $100,000 that the plaintiff had placed into an alleged joint bank account for the purpose of funding a joint venture with the defendant, a California resident, which included investments into California real estate deals and the purchase of a California residence. *Id.* 763. The Plaintiff alleged that the Defendant periodically sent her bank documents through the U.S. mail regarding the bank account. The Defendant moved to dismiss the complaint for lack of personal jurisdiction and submitted an affidavit affirming that <u>she had not been in Illinois for nearly five years</u> and the trial court granted the motion to dismiss. *Id.* at 765.

The *Kalata* court reversed the dismissal and held that personal jurisdiction existed because entry into the joint venture agreement amounted "the making of a contract or promise substantially connected with [Illinois]" so as to satisfy § 5/2-209(a)(7) of the Illinois Long Arm statute. The court reasoned:

8

> Defendant initiated telephone calls with plaintiff in order to negotiate the joint
> venture agreement.   Defendant also mailed plaintiff bank documents from
> California which plaintiff relied on in sending $100,000 to defendant.  Based
> upon these allegations, we hold that plaintiff has made a *prima facia* case that
> defendant entered into a contract substantially connected with Illinois and
> therefore personal jurisdiction is established under section 2-209(a)(7). *Kalata*, at
> 767.

The court also held that the "defendant's telephone and mail communications to negotiate and

execute the joint venture agreement satisfied the long-arm statute" under § 2-209(a)(1) because

these contacts amount to "transacting business" in Illinois.   Specifically, the court found

persuasive that the plaintiff alleged that it was the defendant who solicited the transaction and

who initiated many of the phone calls. *Id.* at 768.

Of particular relevance to this case, in *Continental Bank, N.A. v. Everett*, 964 F.2d 701

(7th Cir. 1992), the Seventh Circuit held that the out of state defendant's act of contractually

guaranteeing the repayment of a loan that was made by an Illinois resident submitted the out of

state defendant to jurisdiction in a court sitting in Illinois.  Guilford Telecasters Inc., which

operated a television station in North Carolina, borrowed $4.2 million from Continental Bank, a

Chicago, Illinois bank, and the stockholders of the borrower jointly and severally guaranteed the

repayment of the loan up to their proportionate percentage of stock ownership. *Id.* at 701.  The

Seventh Circuit affirmed the trial court's ruling that personal jurisdiction existed because the

loan and guarantees amounted to the "making or performance of any contact or promise

substantially connected with [Illinois]" in accordance with § 2-209(a)(7).  The Court noted that

the documents were delivered in Illinois and required that the loan be repaid to an Illinois

resident. *Id.* at 703-04.

Similarly, in *Autotech Controls Corp. v. K. J. Elec. Corp.*, 256 Ill.App.3d 721 (1st Dist.

1993), the court held that there was personal jurisdiction over a New York corporation who

contractually obligated itself to pay for goods and services rendered by an Illinois corporation under § 2-209(a)(7). The plaintiff, who was an Illinois Corporation engaged in the business of making circuit boards, entered into a distributor agreement with the New York defendant company wherein the plaintiff would ship its product to the defendant and repair any defective products in return for an agreed upon price. Defendant paid the plaintiff regularly for two and half years by mailing checks to the plaintiff in Illinois. The plaintiff sued for a payment of an outstanding invoice of $16,666 and the court held that personal jurisdiction existed over the defendant under § 2-209(a)(7). The court stated:

> This action arises our of defendant's contacts with an Illinois corporation. This is a collection suit against defendant to collect money due and owing for labor and circuit boards which defendants ordered through numerous telephone and fax orders. *Id.* at 726.

The court found it compelling that the defendants were "active purchasers" in that they specifically reached out to create an ongoing contractual relationship with an Illinois resident. *Id.* at 726.

Here, Gordon has alleged sufficient facts to establish specific personal jurisdiction over all of the Defendants in accordance with § 2-209(a)(7) of the Illinois Long Arm Statue as Count I of the Complaint against all of the Defendants arises out the breach of the Promissory Note contract. Under the plain language of § 2-209(a)(7) and in accordance with the cases cited above, all of the Defendants, through Harmon, reached out and solicited $1,000,000 from Gordon and contractually obligated themselves to re-pay a large sum of money to an Illinois resident over a twenty four month period. These simple facts alone establish that the contract at issue is "substantially connected" with Illinois so as to confer personal jurisdiction over all of the Defendants.

Further, the specific facts alleged as to both the circumstances of the "loan" and the relationships of all the Defendants establishes that Harmon was acting on behalf of all of the Defendants in his solicitation of the $1,000,000 from Gordon, as none of the Defendants' deny that they accepted the $1,000,000 and that they are contractually obligated to repay Gordon in excess of $1,000,000. As is discussed at length above, the Harmon Defendants were the long time financial agents and advisors for Gordon. It was within the context of this relationship that Harmon reached out to Gordon and solicited the $1,000,000 from him. Cruz and Harmon are known business partners and in fact are the sole shareholders of Vitalis. Further, KCD and Larry Harmon and Associates are the only partners of Vitalis. (Ex. 1, ¶¶ 2-10). Accordingly, the only reasonable inference that can be drawn is that Cruz was aware of the Harmon Defendants' relationship with Gordon and that Harmon was acting on behalf of all of the Defendants in his solicitation of Gordon. Further, it is undeniable that all of the Defendants acquiesced in Harmon's actions to obtain $1,000,000 from Gordon as all of the Defendants executed the Promissory Note and <u>jointly and severally obligated themselves to pay Gordon $1.35 million.</u>

Again, this Court need only answer this question to determine if it has personal jurisdiction over all of the Defendants: When the Defendants actively solicited and accepted a $1,000,000 loan from a well-know Chicago, Illinois resident and then contractually agreed to repay the $1,000,000 plus $350,000 in interest to that Illinois resident over a 24 month period, should the Defendants be surprised to be "hauled into court" in Illinois for the failure to timely repay under the Promissory Note? The answer again is clear. Simply put, this Court has personal jurisdiction over all of the Defendants and the Motion to Dismiss must be denied.

## IV.     __CONCLUSION__

Based upon the foregoing arguments and cited authorities, the Plaintiffs respectfully

request that this Court deny the Defendants' Motion to Dismiss.


_____/s/_____
James W. Davidson

George W. Spellmire
Lisa M. Sommer
James W. Davidson
SPELLMIRE & SOMMER
77 W. Wacker Drive, Suite 4800
Chicago, Illinois 60601
(312) 606-8721