Action Cover Sheet - Case Initiation (Rev. 2/8/06) CCL 0520

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

BEN GORDON, G7, INC., and BG4, INC.
v.
VITALIS PARTNERS, LLC; LARRY HARMON & ASSOCIATES ET. AL

No. _____

## CIVIL ACTION COVER SHEET - CASE INITITATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate case type which best characterizes your action. ONLY ONE (1) CASE TYPE MAY BE CHECKED WITH THIS COVER SHEET.

Jury Demand ☒ Yes ☐ No

**PERSONAL INJURY/WRONGFUL DEATH**
CASE TYPES:
- ☐ 027 Motor Vehicle
- ☐ 040 Medical Malpractice
- ☐ 047 Asbestos
- ☐ 048 Dram Shop
- ☐ 049 Product Liability
- ☐ 051 Construction Injuries (including Structural Work Act, Road Construction Injuries Act and negligence)
- ☐ 052 Railroad/FELA
- ☐ 053 Pediatric Lead Exposure
- ☐ 061 Other Personal Injury/Wrongful Death
- ☐ 063 Intentional Tort
- ☐ 064 Miscellaneous Statutory Action (Please Specify Below**)
- ☐ 065 Premises Liability
- ☐ 078 Fen-phen/Redux Litigation
- ☐ 199 Silicone Implant

(FILE STAMP)

**COMMERCIAL LITIGATION**
CASE TYPES:
- ☒ 002 Breach of Contract
- ☐ 070 Professional Malpractice (other than legal or medical)
- ☐ 071 Fraud
- ☐ 072 Consumer Fraud
- ☐ 073 Breach of Warranty
- ☐ 074 Statutory Action (Please Specify Below**)
- ☐ 075 Other Commercial Litigation (Please Specify Below**)
- ☐ 076 Retaliatory Discharge

**TAX & MISCELLANEOUS REMEDIES**
CASE TYPES:
- ☐ 007 Confession of Judgment
- ☐ 008 Replevin
- ☐ 009 Tax
- ☐ 015 Condemnation
- ☐ 017 Detinue
- ☐ 029 Unemployment Compensation
- ☐ 036 Administrative Review Action
- ☐ 085 Petition to Register Foreign Judgment
- ☐ 099 All Other Extraordinary Remedies

**OTHER ACTIONS**
CASE TYPES:
- ☐ 062 Property Damage
- ☐ 066 Legal Malpractice
- ☐ 077 Libel/Slander
- ☐ 079 Petition for Qualified Orders
- ☐ 084 Petition to Issue Subpoena
- ☐ 100 Petition for Discovery

**



By: _____
(Attorney) (Pro Se)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – LAW DIVISION

BEN GORDON, G7, INC., and BG4, INC. )
)
    Plaintiff, )
)                        2007L009853
)                        CALENDAR/ROOM S
vs. )                        TIME 00:00
)                        Breach of Contract
VITALIS PARTNERS, LLC; LARRY )
HARMON & ASSOCIATES, P.A.; KCD )    No.
DEVELOPMENTS, LLC; LARRY )
HARMON; and KENNY CRUZ )    **JURY TRIAL DEMANDED**
)
    Defendants. )
)
)
)
)
)
)
)

## COMPLAINT

NOW COME the Plaintiffs, BEN GORDON, G7, INC. and BG4, INC. (sometimes collectively referred to as "Mr. Gordon"), by and through his attorneys, SPELLMIRE & SOMMER, and complaining of the Defendants, VITALIS PARTNERS, LLC; LARRY HARMON & ASSOCIATES, P.A.; KCD DEVELOPMENTS, LLC; LARRY HARMON; and KENNY CRUZ, (collectively, "the Defendants") states as follows:

### INTRODUCTION

1.     Ben Gordon, a professional basketball player for the Chicago Bulls, seeks recovery from his previous financial advisors and consultants who breached Mr. Gordon's trust and confidence by using his money for their advantage and by improperly taking a percentage of Mr. Gordon's income as a fee for services despite Mr. Gordon never agreeing to and expressing concern as to such an arrangement. Mr. Gordon's advisors, who were to be paid a set monthly

fee to act as his trusted financial advisors and have control over his funds and bank accounts, unilaterally began charging Mr. Gordon an excessive fee amounting to 1.5% of Mr. Gordon's total income. Further, Mr. Gordon's advisors used their position of trust to induce Mr. Gordon to apparently invest $1,000,000 in a real estate deal, but in reality his advisors used the money to acquire *their own* interest in this real estate and drew up a Promissory Note ("the Note") wherein the Defendants promised to re-pay the $1,000,000 they borrowed from Mr. Gordon to gain an interest in the real estate as well as interest at a rate of 17.5%. When Mr. Gordon discovered these indiscretions and demanded the repayment of his money, rather than simply paying back the money and agreeing to sever ties, his advisors refused to pay back the $1,000,000.

## PARTIES

2. Ben Gordon is an individual and a resident of Cook County, Illinois. Mr. Gordon makes his living as a professional basketball player and is employed by the Chicago Bulls.

3. BG4 Inc. ("BG4") is a Delaware corporation. Ben Gordon is the sole shareholder of BG4.

4. G7 Inc. ("G7") is a Delaware corporation. Ben Gordon is the sole shareholder of G7.

5. Ben Gordon, BG4 and G7 are sometimes collectively referred to as Mr. Gordon.

6. Vitalis Partners, LLC ("Vitalis") is a limited liability company organized under the laws of Delaware and its office is located at 2209 Plaza Drive, Suite 100, Rocklin California 95765. Vitalis' partners are Larry Harmon & Associates, P.A. and KCD Developments, LLC ("KCD"). Its shareholders are Larry Harmon and Kenny Cruz.

7. Larry Harmon & Associates, P.A. is a California corporation and its office is located at 2209 Plaza Drive, Suite 100, Rocklin California 95765.

8. KCD Developments, LLC is a limited liability company with its principal place of business in California.

9. Larry Harmon is an individual and a resident of the state of California.

10. Kenny Cruz is an individual and a resident of the state of California.

## THE CONSULTING AGREEMENT

11. On May 17, 2004 Ben Gordon executed an agreement drafted by Larry Harmon & Associates where in Larry Harmon and Larry Harmon & Associates (sometimes collectively referred to as "the Harmon Defendants") would act as his financial advisors and consultants and would specifically "provide detailed financial and tax consulting services for the duration of your playing career with the National Basketball Association ("NBA")." (The "Consulting Agreement," attached as Exhibit A).

12. The Consulting Agreement also provides that the Harmon Defendants had the "intent of being involved in every financial decision with [Mr. Gordon] so that we can appropriately gain any tax and/or financial advantages or savings on such expenditure or purchase."

13. The Consulting Agreement provides that during the duration of Mr. Gordon's rookie contract, he was to pay the Harmon Defendants $4,000 per month during his rookie season, $5,000 per month during his second season and $6,000 per month during his third and fourth seasons plus reasonable expenses.

14. The Consulting Agreement makes no mention of the Harmon Defendants taking a percentage of Mr. Gordon's salary as a fee, but rather provides that after the expiration of the rookie contract, "we will evaluate the amount of work that we have performed on your account and provide you with a new engagement letter at that time."

3

15. As a result of the Consulting Agreement and the Harmon Defendants' control over Mr. Gordon's financial affairs, Mr. Gordon's paychecks from the Chicago Bulls were deposited and wired into Mr. Gordon's accounts which were controlled by the Harmon Defendants.

16. Further, as a result of the Consulting Agreement and the Harmon Defendants' control over Mr. Gordon's financial affairs, Larry Harmon would travel to Chicago, Illinois to discuss certain investment opportunities and Mr. Gordon's fee arrangement with the Harmon Defendants with Mr. Gordon.

## THE PITCH TO INVEST IN A REAL ESTATE DEAL

17. Sometime in or around August of 2006, Larry Harmon contacted Mr. Gordon and informed Mr. Gordon that he should invest $1,000,000 in a real estate investment that would pay a large dividend after 24 months.

18. Larry Harmon stated that he was going to invest $1,000,000 of his own money in this real estate deal because the prospects were so promising.

19. On Larry Harmon's advice and suggestion, Mr. Gordon gave his consent for Larry Harmon to investment $1,000,000 in this real estate deal. In order to effectuate Mr. Gordon's $1,000,000 "investment," Larry Harmon convinced Mr. Gordon to allow him to take $750,000 of Mr. Gordon's funds and for Mr. Gordon to borrow the remaining $250,000.

## THE DISCOVERY OF THE HARMON DEFENDANTS' IMPROPER CONDUCT

20. In or around May of 2006, Larry Harmon contacted Mr. Gordon and indicated that he wanted to discuss changing the fee Mr. Gordon paid for the Harmon Defendants' services from the flat monthly fee to a percentage of Mr. Gordon's income.

4

21. Mr. Gordon never agreed either verbally or in writing to a change from the flat monthly fee to a percentage of his overall income as compensation for the Harmon Defendants' services. Rather, Mr. Gordon, on multiple occasions, expressed concerns and reservations about such an arrangement.

22. In the process of severing his relationship with the Harmon Defendants and transferring his funds to new advisors, it was discovered that rather than invest the $1,000,000 in real estate for the benefit of Mr. Gordon, the Harmon Defendants actually used Mr. Gordon's money to effectuate their own investment in this real estate deal.

23. In fact, and unbeknownst to Mr. Gordon, the Defendants papered the deal by drawing up a Promissory Note which evidenced Mr. Gordon's "loan" of $1,000,000 to the Harmon Defendants and the other Defendants for their investment in a real estate deal.

24. This led Mr. Gordon and his current advisors to demand repayment of the $1,000,000 used by the Harmon Defendants to effectuate the Defendants' investment into a real estate deal.

25. Further, in the process of severing his relationship with the Harmon Defendants and transferring his funds to new advisors, it was discovered that the Harmon Defendants had been charging Mr. Gordon a fee of 1.5% of his income for the services they provided for a number of months, despite failing to receive Mr. Gordon's authorization or consent to do so.

## THE PROMISSORY NOTE

26. On or about February 12, 2007, the Defendants apparently executed the Promissory Note ("the Note"), which is attached hereto as Exhibit B.

27. The Note memorializes that the Defendants "borrowed" $1,000,000 from Mr. Gordon and obligates the Defendants to re-pay the principle loan amount as well as interest at a rate of 17.5%.

28. The Note obligates the Defendants to pay Mr. Gordon $4,167.67 per month by the fifth day of each month as partial payment of the total 17.5% interest due.

29. The clause entitled **"Default"** provides:

Borrower will be in default if Borrower fails to make any payment within forty five (45) days of its due date. A late charge in the amount of three percent (3 %) of any payment required to be made hereunder shall be imposed on each such payment not received by the Lender within fifteen (15) days after it is due. The late charge is not a penalty, but liquidated damages to defray administrative and related expenses due to such late payment. The late charge shall be immediately due and payment shall by paid by the Borrower to Lender without notice or demand.

30. The clause entitled **"Expenses"** provides that:

All parties liable for the payment of this Note agree to pay the Lender all costs incurred by it in connection with the collection of this Note. Such costs include, without limitation, fees for the services of counsel and legal assistants (including bankruptcy counsel fees and expenses) employed to collect this Note, whether or not a suit is brought, and whether incurred in connection with collection, trial, appeal or otherwise.

31. The clause entitled **"Lender's Rights"** provides that:

Upon default, Lender may declare the entire unpaid principle on this Note and all accrued unpaid costs and fees immediately due, without notice, and then Borrower will pay that amount. Upon default, or if this Note is not paid at final maturity, Lender, at its option, may add any unpaid accrued costs and fees to principal and such sum will bear interest therefrom until paid at Eighteen Percent (18%) (the "Default Rate").

## COUNT I – BREACH OF CONTRACT (All DEFENDANTS)

32. Mr. Gordon re-alleges and incorporates by reference Paragraphs 1 through 31 as and for paragraph 32.

6

33. On February 12, 2007, the Defendants executed the Note, thereby contractually binding them to perform all of the obligations expressed in the Note, including the making of monthly payments to Mr. Gordon by the fifth day of each month thereafter in the amount of $4,167.67.

34. The Defendants failed to make any of the $4,167.67 in a timely manner in accordance with the express terms of the Note, and specifically for the months of March, April, May, June, and July of 2007.

35. On July 31, 2007 Mr. Gordon's current advisor wrote to Larry Harmon and indicated that the Note was in default and demanded repayment of the entire unpaid $1,000 principal balance, all accrued interest, costs and late fees.

36. At that time, the March, April, May, June and July $4,167.67 interest payments were all over forty-five days delinquent. Accordingly, the Note was in fact is in default in accordance with the Note's Default clause when Mr. Gordon, through his current advisor, exercised his rights under the Lender's Rights Clause.

37. To date, and despite Mr. Gordon having exercised his rights to declare a default under the Lender's rights clause, the Defendants have refused to return the $1,000,000 principal loan amount to Mr. Gordon.

Wherefore, Plaintiff Ben Gordon respectfully requests judgment in his favor and against all Defendants and for the recovery of the following damages:

(1) Re-payment of the $1,000,000 principle loan amount;

(2) Any and all delinquent interest payments that exist as of the date of the filing or arise during the course of this action;

(3) A 3% late charge on any delinquent interest payments that exist as of the date of the filing of this action or which arise during the course of this action;

(4) Interest at a rate of 18% for the accrued costs, fees, principle and all unpaid monthly interest payments until the date of judgment;

(5) Expenses and costs of suit as well as all attorneys' fees expended in the collection of the money due under the Note.

## COUNT II BREACH OF FIDUCIARY DUTY (HARMON DEFENDANTS)

38. Mr. Gordon re-alleges and incorporates by reference Paragraphs 1 through 37 as and for paragraph 38.

39. At all times pertinent, Mr. Gordon placed his complete trust and confidence in the Harmon Defendants in regards to his financial, investment, tax and business affairs. In particular, and without limitation:

   a. The Harmon Defendants had vastly greater business experience than Mr. Gordon;

   b. The Harmon Defendants had control over Mr. Gordon's monies and accounts;

   c. Mr. Gordon disclosed complete and confidential personal financial information to the Harmon Defendants;

   d. Mr. Gordon relied heavily on the Harmon Defendants for advice and assistance in his financial and business affairs;

   e. Mr. Gordon entrusted the Harmon Defendants to invest purportedly $1,000,000 in a real estate deal based upon the Harmon Defendants' urging; and

   f. The Harmon Defendants acted as Mr. Gordon's agent in regards to his financial and business affairs.

40. As a result of the trust and confidence reposed by Mr. Gordon, the Harmon Defendants gained influence and superiority over Mr. Gordon in regards to his financial, investment, tax and business affairs.

41. As a result of said trust and confidence Mr. Gordon placed with the Harmon Defendants and the Harmon Defendants knowledge that Mr. Gordon placed his trust and confidence in them; the Harmon Defendants owed a fiduciary duty to Mr. Gordon to fully disclose and accurately represent all facts relating to Mr. Gordon's finances, investments, taxes and business matters, as well as the facts regarding the fees charged by the Harmon Defendants

42. The Harmon Defendants further owed to Mr. Gordon a duty to act in Mr. Gordon's best interest and with good faith, loyalty and trust.

43. The Harmon Defendants breached said fiduciary duties owed to Mr. Gordon in one or more of the following respects:

   a. The Harmon Defendants charged Mr. Gordon an excessive fee amounting to 1.5% of his income without obtaining his authorization or consent;

   b. The Harmon Defendants charged Mr. Gordon a fee amounting to 1.5% of his income despite Mr. Gordon's execution of the Consulting Agreement which set only a monthly fee to be paid to the Harmon Defendants;

   c. The Harmon Defendants unilaterally changed their fee structure from a set monthly amount to a percentage of Mr. Gordon's overall income;

   d. The Harmon Defendants failed to disclose the true nature of the use of Mr. Gordon's $1,000,000 investment in the real estate deal;

   e. The Harmon Defendants used $1,000,000 of Mr. Gordon's money to obtain their own interest in a real estate deal;

   f. The Harmon Defendants misrepresented to Mr. Gordon the actual use of the $1,000,000 that was purportedly to be used for Mr. Gordon's acquiring an interest in real estate; and

   g. The Harmon Defendants refused to return the $1,000,000 principle loan amount to Mr. Gordon despite being in default under the Promissory Note which they had drafted.

44. One or more of the above wrongful acts or omissions and breaches of fiduciary duties committed by the Harmon Defendants was a direct and proximate cause of the injuries described herein and suffered by Mr. Gordon.

45. But for the wrongful acts or omissions and breaches of fiduciary duty committed by Harmon Defendants, Mr. Gordon would not have agreed to allow the Harmon Defendants to use $1,000,000 of his funds to purportedly gain an interest in a real estate deal; would not have been charged an excessive fee; and would not have unknowingly paid to the Harmon Defendants a percentage of his total income.

Wherefore, Plaintiff Ben Gordon respectfully requests judgment in his favor and against all Defendants and for the recovery of the following damages:

(1) For judgment against the Harmon Defendants, jointly and severally in an amount in excess of $1,000,000 as compensatory damages for the use of his funds to purportedly purchase a property interest;

(2) For judgment against the defendants, jointly and severally, in an amount in excess of $1,000,000 as punitive damages;

(3) For damages in connection with the excessive fees the Harmon Defendants charged Mr. Gordon;

(4) For plaintiffs' costs of suit; and

(5) For such other and further relief as the Court deems just.

**PLAINTIFFS DEMAND TRIAL BY JURY.**

Respectfully submitted,

BEN GORDON

By: _____
One of his attorneys

George W. Spellmire, Jr.
James W. Davidson
SPELLMIRE & SOMMER
77 W. Wacker Drive, Suite 4800
Chicago, Illinois 60601
(312) 606-8721
Firm I.D. 39940