UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BEN GORDON, G7, INC., and BG4, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 07 C 6807 |
| | ) | |
| VITALIS PARTNERS, LLC; LARRY HARMON | ) | |
| & Associates, P.A.; KCD DEVELOPMENTS, | ) | |
| LLC; LARRY HARMON and KENNY CRUZ, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendants Larry Harmon;

Larry Harmon & Associates, P.A. ("LHA"); Vitalis Partners, LLC ("Vitalis"); Kenny

Cruz; and KC Development Company, LLC ("KCD") to dismiss the complaint of

Plaintiffs Ben Gordon; BG4, Inc.; and G7, Inc. for lack of personal jurisdiction. For the

reasons set forth below, the motion is denied.

## BACKGROUND

According to the allegations contained in the complaint, Plaintiff Ben Gordon is

a professional basketball player who plays for the Chicago Bulls, a team in the National

Basketball Association ("NBA"). He is a citizen of Illinois. Gordon is the sole

shareholder of Plaintiffs BG4, Inc. and G7, Inc. Each corporation is a citizen of

Delaware and Illinois.  In May 2004, Gordon engaged Harmon and LHA as his financial advisors and consultants.  Harmon and LHA are citizens of California, as are Vitalis, Cruz, and KCD.

The original agreement, set out in a letter, contemplated that Harmon and LHA would provide financial services to Gordon throughout his NBA career, which the letter characterized as "a long-term relationship."  It further provided that they intended to be involved in all of Gordon's financial decisions.  The letter set out a schedule of estimated fees for a four-year period: for the first year, the fee was $4000 per month plus out-of-pocket expenses; for the second, $5000 per month plus out-of-pocket expenses; and for the third and fourth, $6000 per month plus out-of-pocket expenses.

Once Gordon began playing for the Bulls, his paychecks were wired directly to accounts controlled by Harmon and LHA.  Harmon traveled to Chicago to meet with Gordon to discuss investment opportunities.  The relationship continued for over two years.  In May 2006, Harmon contacted Gordon to discuss changing the fee structure to one based on a percentage of Gordon's income.  According to the complaint, Gordon continually expressed reservations about such an arrangement and never agreed to the change.  At some point not specified within the complaint, LHA began charging Gordon fees of 1.5% of his income for the services.  Gordon alleges that he never consented to the change.

- 2 -

In August 2006, Harmon contacted Gordon about an investment opportunity in real estate in California. The complaint alleges that Harmon advised Gordon to invest a total of $1,000,000, consisting of $750,000 of Gordon's own funds and $250,000 in borrowed funds. However, rather than investing the money on Gordon's behalf, in February 2007 Vitalis, LHA, KCD, Cruz, and Harmon borrowed that amount from Gordon to invest it for their own benefit. They executed a promissory note stating that Gordon, BG4, and G7 had lent them $1,000,000 and setting out terms by which that amount would be repaid. When Gordon discovered the existence of the note, he attempted to enforce its terms, but to no avail.

Gordon, BG4, and G7 then filed a two-count complaint in Illinois state court. Count One asserts a claim against all five defendants for breach of contract from failure to honor the terms of the promissory note. Count Two contends that Harmon and LHA breached fiduciary duties to Gordon over the course of their relationship by actions such as changing the fee structure without Gordon's consent and recharacterizing the $1,000,000 transaction into a deal of a nature other than that to which Gordon agreed.

Vitalis, LHA, KCD, Cruz, and Harmon removed the case to this court, relying upon diversity jurisdiction and now move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2), arguing that this court has no personal jurisdiction over them.

## LEGAL STANDARD

When faced with a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), a plaintiff bears the burden of making a prima facie showing that jurisdiction over the defendant is proper. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In considering the motion, a court accepts all well-pleaded allegations as true unless controverted by affidavits. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). If a defendant supplies affidavits contesting personal jurisdiction, a plaintiff must meet those assertions with affirmative evidence that supports the presence of jurisdiction. *Purdue*, 338 F.3d at 783.

In a diversity case, personal jurisdiction can be exercised over a nonresident defendant only if an appropriate state court would have such jurisdiction. *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995). Even if jurisdiction can be established under state law, the exercise of that jurisdiction must be consistent with constitutional due process concerns. *Saylor v. Dyniewski*, 836 F.2d 341, 343-44 (7th Cir. 1988). An exercise of jurisdiction over a non-resident defendant is constitutional due process if the defendant has "purposefully established minimum contacts within the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). When a party's contact with a forum state reaches a certain level, it is reasonable for him or her to expect to be subject to suit in that state in connection with that contact. *Id.* at 474, 475. The level

- 4 -

of contact necessary will depend on several factors.  One consideration is whether the plaintiff asserts that the court has specific personal jurisdiction, meaning that the cause of action arises from the activities within the forum state, or general personal jurisdiction, meaning that the cause of action is unrelated to the defendant's activities in the forum state.  In addition, factors other than the burden on the defending party can come into play, such as the interest of the forum state in adjudicating the dispute in its courts, allowing the plaintiff to obtain convenient and effective relief, and the interest of the interstate judicial system in efficient resolution of controversies that can be addressed in multiple fora.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).  No matter how these factors combine, however, due process mandates that maintenance of the suit in the forum is consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

With these principles in mind, we turn to the motion at hand.

## DISCUSSION

In a diversity case such as this one, the propriety of an exercise of personal jurisdiction will be dictated by state law.  Because the question presented in this motion is whether the defendants are subject to personal jurisdiction in Illinois, we look to Illinois law to decide the issue.

The Illinois long-arm statute, 735 ILCS 5/2-209, sets out the acts that will submit a person to jurisdiction within this state regardless of their place of citizenship or

residence.  Of importance to this case are subsection (a)(1), which states that jurisdiction can be based on the transaction of any business within Illinois, and (a)(7), which provides that jurisdiction can result from the making or performance of any contract or promise substantially connected with Illinois.  Because the two counts of the complaint are not both directed at the same parties, we will consider them separately.

## A.  Count One: Breach of Contract

Count One alleges that the signatories to the February 2007 promissory note breached their promise to pay Gordon according to its terms.  It is asserted against all five defendants, who argue that they do not have sufficient contacts with the state of Illinois to expose them to jurisdiction within this state.  Because the cause of action asserted arises from the loan transaction memorialized within the promissory note, we will first examine whether specific jurisdiction is present with respect to these defendants.

According to the defendants, they did not engage in any of the activities set forth in 735 ILCS 5/2-209.  They emphasize the relationship of the note and the various borrowers to the state of California.  However, we are not deciding a choice of law issue, in which the degree of contact with a particular state can be a significant factor. *See Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 723 N.E.2d 687, 694 (Ill. App. Ct. 1999).  The salient consideration for this motion is whether the connection to Illinois is such that an exercise of jurisdiction is appropriate.  Resolution of that issue

does not depend on whether there are other states where jurisdiction is also appropriate and more readily established.

The allegations within the complaint assert that Gordon resided in and was a citizen of Illinois when Harmon approached him about the real estate investment. The note clearly specifies that Gordon and his companies were the source of the money; defendants would be hard-pressed to deny that they knew that he and his funds were in the state of Illinois. The funds at issue at least in part belonged to Gordon personally. By its terms, the note contemplated an extended course of performance, with a minimum of two years of interest payments to Gordon and his companies in addition to the repayment of the principal amount. The combination of all of these aspects convinces us that the contract at issue was substantially connected with Illinois, thus satisfying the requirements of 735 ILCS 5/2-209(a)(7) for an exercise of long-arm jurisdiction over these defendants.

Furthermore, the specific (and unusual) circumstances of this case convince us that an exercise of personal jurisdiction in this instance is consistent with "traditional notions of fair play and substantial justice." According to the allegations of the complaint, Defendants orchestrated this transaction without Gordon's participation or prospective agreement to litigating disputes in another forum. They "borrowed" $1,000,000 from a known Illinois resident while concealing the true nature of the transaction from him. It is unreasonable for them to expect not to be sued in the home

state of the person who is the source of the funds.  Consequently, we conclude that an

exercise of specific personal jurisdiction over all five defendants is proper with respect

to Count One of the complaint.

**B. Count Two: Breaches of Fiduciary Duty**

Count Two alleges that Harmon and LHA breached fiduciary duties owed to

Gordon with respect to actions taken in the course of their relationship such as the

change in the fee structure and the treatment of the $1,000,000 transaction.  As was the

case for Count One, Harmon and LHA contend that they do not have sufficient contact

with Illinois to justify an exercise of personal jurisdiction over them for the claimed

breaches of fiduciary duty.

The allegations of the complaint support a conclusion that these defendants were

transacting business in Illinois through their relationship with Gordon.  Harmon and

LHA entered a continuing relationship with Gordon that lasted for more than two years

and was contemplated to last for at least four.  They were involved in every aspect of

Gordon's financial dealings.  Though the complaint gives no specifics about the extent

of Gordon's holdings, given his status as a professional athlete in a sport known to yield

large earnings for players both directly and through endorsements, it is extremely

unlikely that Harmon and LHA interacted with Gordon sporadically during those years;

multiple contacts via phone, email, regular mail, and physical visits would instead be

expected. Harmon and LHA performed individualized services for a substantial amount

- 8 -

of money for a known Illinois client.  Though the phrase "transacting business" does not lend itself to exact definition, the nature of the activities at issue in this case convince us that the activities of Harmon and LHA here safely fall within its boundaries.  Since the claims asserted arise out of the activities of Harmon and LHA that constitute their transaction of business within Illinois, an exercise of specific personal jurisdiction is appropriate.  *See West Virginia Laborers Pension Trust Fund v. Caspersen*, 829 N.E.2d 843, 850 (Ill. App. Ct. 2005).

Moreover, a reasonable person in the shoes of Harmon and LHA would recognize the likelihood of being called to a court in the client's home state to answer legal allegations.  Purposeful direction of activity and availment of benefits of associating with an Illinois resident are readily apparent in this case; due process concerns of an exercise of personal jurisdiction are simply not implicated.

## CONCLUSION

Based on the foregoing, the motion to dismiss is denied.

Charles P. Kocoras
United States District Judge

Dated:   February 20, 2008

- 9 -