IN THE UNTIED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BEN GORDON, G7, INC., and BG4, INC. )<br>)<br>　　　Plaintiff, )<br>)<br>vs. )<br>)<br>VITALIS PARTNERS, LLC; LARRY )<br>HARMON & ASSOCIATES, P.A.; KCDD )<br>DEVELOPMENTS, LLC; LARRY )<br>HARMON; and KENNY CRUZ )<br>)<br>　　　Defendants. ) | No. 07 C 6807 |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION
### TO DISMISS DEFENDANTS' COUNTERCLAIM

Plaintiffs, BEN GORDON, G7, INC. and BG4, Inc. (collectively, "Gordon"), by and through their attorneys, SPELLMIRE & SOMMER, and pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), submit this Memorandum in Support of their Motion to Dismiss the Defendants' Counterclaim.

### I.　　INTORDUCTION

The Harmon Defendants' counterclaim fails under well-establish law and must be dismissed with prejudice. The fiduciary relationship between Gordon and the Harmon Defendants was memorialized in a written Consulting Agreement which was signed by Gordon prior to his entrance into the NBA. The Consulting Agreement provided that Gordon would pay the Harmon Defendants a sizeable monthly fee in return for the Harmon Defendants' acting as his financial fiduciary. To that end the Harmon Defendants received all of Gordon's paychecks, provided him investment and tax advice, paid his bills and were generally involved in all of

Gordon's financial decisions. The Harmon Defendants were not Gordon's "sports agent" and played no part in negotiating his contract with the Chicago Bulls.

After becoming dissatisfied with the Harmon Defendants' fees and services, Gordon terminated his relationship with the Harmon Defendants. The Harmon Defendants, in their counterclaim, now make the ridiculous assertion that Gordon breached the Consulting Agreement because "Gordon had no right to terminate the [Harmon Defendants'] services." (Counterclaim, attached as Ex. 2, ¶ 7). However, this assertion and the entire counterclaim flies in the face of established law as it is fundamental that a client has the absolute right to terminate a fiduciary relationship at any time regardless of whether a contract or fee agreement provides otherwise. Further, the Harmon Defendants have not nor cannot allege that Gordon failed to pay the Harmon Defendants for the services they provided during the entirety of the relationship. Simply put, the Harmon Defendants' counterclaim fails as a matter of law and must be dismissed.

## II.    RELEVANT FACTS AND ALLEGATIONS

These facts and allegations are gleaned from Gordon's Complaint, the Consulting Agreement attached as Exhibit A thereto, the Defendants' Counterclaim or are otherwise publicly known facts about Mr. Gordon's NBA career. (Complaint, attached as Exhibit 1).

On May 17, 2004 Gordon executed a "Consulting Agreement" with Harmon and Larry Harmon & Associates (the "Harmon Defendants"), wherein the Harmon Defendants agreed to act as Gordon's financial fiduciary and provide Gordon with "detailed financial and tax consulting services for the duration of [his] playing career in the National Basketball Association." (Ex. 1, ¶ 11 and Ex. A); (Ex. 2 ¶ 4). The Consulting Agreement also provides that the Harmon Defendants had the "intent of being involved in every financial decision with [Mr.

Gordon] so that [they] can appropriately gain any tax and/or financial advantages or savings on such expenditure or purchase." (Ex. 1, ¶ 12 and Ex. A).[1]

On June 24, 2004, one month after Gordon and the Harmon Defendants entered into the Consulting Agreement, the Chicago Bulls drafted Ben Gordon with the third-pick in the 2004 NBA draft. Since that time and commencing with the 2004-2005 NBA basketball season, Gordon has been a player for the Chicago Bulls. (Ex. 1, ¶¶ 2, 15). Since May 17, 2004 and until and including the first half of 2007, the Harmon Defendants acted as Gordon's financial fiduciary, tax and investment advisor. (Ex. 1, ¶ 16). Gordon's paychecks from the Chicago Bulls were directly wired into accounts controlled by the Harmon Defendants and the Harmon Defendants had control over substantial funds belonging to Gordon. (Ex. 1, ¶ 16). Gordon eventually lost trust in Harmon and became uncomfortable with the fees that the Harmon Defendants were charging him for their services and terminated the relationship. (Ex. 2, ¶ 6).

## III. CONTRACT INTERPREATION IS A PROPER SUBJECT OF A RULE 12(b)(6) MOTION.

The decision of whether a claimant can state a claim under any set of circumstances for breach of contract is the proper subject of a motion to dismiss under Rule 12(b)(6). *Rosenblum v. Travlebyus.com LTD.*, 299 F.3d 657, 661 (7th Circ. 2002); *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 432-33 (7th Circ. 1993). Documents attached to a plaintiff's complaint are considered a part of that pleading for all purposes. *Venture Associates Corp.*, at 432. Further, it is not even necessary that a contract be attached to the pleading at issue for a court to consider the contract if they are referred to in the pleading and "are central to [the] claim." *Id.*

---

[1] The Consulting Agreement is the subject of the Defendants' counterclaim.

Here, the Consulting Agreement which forms the basis of the Harmon Defendants' counterclaim was attached to Gordon's Complaint. (Ex. 1, Ex. A). Further, the Consulting Agreement is clearly central to the Harmon Defendants' counterclaim as the claim is an alleged breach of that agreement and is cited and quoted in the counterclaim. (Ex. 2). Accordingly, it is proper for this court to determine if the Defendants can even state a claim for an alleged breach of the Consulting Agreement by way of this Rule 12(b)(6) motion.

IV. **A CLIENT HAS AN ABSOLUTE RIGHT TO TERMINATE A FIDUCIARY RELATIONSHIP.**

The Harmon Defendants' breach of contract claim based upon the argument that Gordon was somehow contractually prohibited from terminating the Harmon Defendants as his financial fiduciaries is simply contrary to settled law.[2] Basic agency law as well as more recent common law decisions regarding fiduciary relationships from many jurisdictions have long held that a client has an absolute right to terminate a fiduciary relationship regardless of the language of the written contract or fee agreement.

In *Fracasse v. Ray Braka Brent,* 6 Cal.3d 784, 790-91 (1972), the California Supreme Court held that a client has the absolute to terminate his attorney regardless of the terms of the agreement and fee agreement due to the fiduciary relationship between lawyer and client. The Court held that the right to terminate the fiduciary relationship is necessary and is to be deemed implied in the contract because it would be unjust to require a client to be precluded from terminating his attorney in a situation where the client has lost trust and confidence in the fiduciary. *Id.* The Court stated:

---

[2] There issue of whether California, Illinois or the law of another state should apply has never been addressed by the parties or this Court. However, the principle of law that this Motion is based upon is universal and is commonly accepted. That being that a client or principle has the absolute right to terminate a fiduciary or agency relationship regardless of any language contained in a contract.

4

> We have concluded that a client should have both the power and the right at any time to discharge his attorney with or without cause. Such a discharge does not constitute a breach of contract for the reason that it is a basic term of the contract <u>implied by law</u> into it by reason of the special relationship between the contracting parties, that the client may terminate that contract at will. It would be anomalous and unjust to hold the client liable for damages for exercising that <u>basic implied right.</u> *Id.* (Emphasis added).

*See also, Matter of Van Sickle,* 4 Cal. State Bar Ct.Rptr. 980, 989 (2006), holding that counsel's retainer agreement which prohibited the client from terminating the lawyer unless for cause was invalid and violated "fundamental public policy."

Similarly, in Illinois, it has long been the law that a client may discharge his fiduciary at any time with our without cause regardless of the contractual arrangement and terms between the parties. *Dowd & Dowd, Ltd. v. Gleason,* 352 Ill.App.3d 3655 (1st Dist. 2004). The rationale for this rule is that it would be unjust for a client who <u>rightfully or wrongfully</u> distrusts his or her lawyer to be precluded from terminating that relationship, because such distrust is central to and could materially interfere with the fiduciary and professional relationship. *Miller v. Solomon,* 49 Ill.App.2d 156 (1st Dist. 1964).

The legal principle stated in the lawyer-client fiduciary relationship context has been applied in many different fiduciary contexts, including that of a financial fiduciary and client. *See e.g., Beacon Hill CBO II, Ltd. v. Beacon Hill Asset Management,* 249 F.Supp.2d 268 *LLC* (S.D.N.Y 2003). In *Beacon Hill,* the court agreed with the general principle that a client who has lost faith in his investment and portfolio manager has the right to discharge that fiduciary and stated that there is a:

> well-established equitable principle that a client may terminate a fiduciary at will upon losing trust and confidence in that fiduciary. *Id.* at 272.

Further, the court recognized that this rule of law has been applied to preclude contractual restrictions on a client's ability to terminate her lawyer, pension plan trustee, real estate agent and general agent. *Id.*

The legal rule that a principal or client may terminate his agent or fiduciary at will for any reason has been codified by the California Legislature. Cal. Civ. Code Ann. § 2356 (West 2007). Section 2356 entitled, Agency Not Coupled with an Interest" provides:

> (a) Unless the power of an agent is coupled with an interest in the subject of the agency, it is terminated by any of the following:
>
> (1) Its revocation by the principal.

Courts have held that under this statute, an agency relationship may be terminated at will by the principal because of the special nature of this type of relationship even if the contract expressly provides that the agency is "irrevocable." *Woolley v. Embassy Suites, Inc.*, 227 Cal.App.3d 1520 (1st Dist. 1991). Further, the *Woolley* court reasoned that it is inherently within the power of the principal to manage his or her own business, and this includes the control of the business that has been even <u>irrevocably</u> delegated to the agent. *Id.*

Based upon the universal and fundamental right of a client to terminate his fiduciary with or without cause regardless of the contractual terms, it is clear the Defendants' counterclaim fails as a matter of law. The Harmon Defendants' position is that Gordon could not terminate his relationship with Harmon for any reason because the Consulting Agreement states that the Harmon Defendants would provide financial services for the "duration of [Gordon's] playing career in the National Basketball Association." However, the Harmon Defendants' position that Gordon "had no right to terminate [Harmon's] services" is simply contrary to law and public policy.

Gordon, whether right or wrong, lost trust in the Harmon Defendants. The Harmon Defendants controlled Mr. Gordon's substantial wealth and millions of dollars belonging to Gordon. Settled law recognizes that it would be unjust and unlawful to require Mr. Gordon to forego his fundamental right to terminate his fiduciary who has access to his bank accounts, investments and all financial information because the fiduciary wrote a contract that provided that he would serve Mr. Gordon for the entirety of his NBA career. This feared inequity is why the law provides that a client's right to terminate his fiduciary at will <u>cannot</u> be contractually limited, as this right is deemed fundamental and is an implied and absolute contractual right. Accordingly, Gordon did have the right to terminate this fiduciary relationship for any reason and for the specific reason of his loss of faith and confidence in the Harmon Defendants.

Further, there is no allegation that Mr. Gordon failed to pay any of the monthly service payments to the Harmon Defendants during the course of their relationship. Since Harmon had control of Gordon's accounts, all he had to do was pay himself from Gordon's accounts, which he did. Accordingly, this breach of contract counterclaim must be dismissed.

## V.  CONCLUSION

Based upon the foregoing arguments and cited authorities, the Plaintiffs respectfully request that this Court dismiss with prejudice the Defendants' Counterclaim.

_____/s/_____
James W. Davidson

George W. Spellmire
Lisa M. Sommer
James W. Davidson
SPELLMIRE & SOMMER
77 W. Wacker Drive, Suite 4800
Chicago, Illinois 60601
(312) 606-8721