JKB/cic/322939 8190-1-51

# UNITED STATED DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| BEN GORDON, G7, INC. and BG4, INC., | )<br>) |
| Plaintiffs, | )<br>)<br>) |
| v. | ) No. 07 C 6807<br>) |
| VITALIS PARTNERS, LLC; LARRY HARMON & ASSOCIATES, P.A.; KCD DEVELOPMENTS, LLC; LARRY HARMON and KENNY CRUZ, | ) Judge Kocoras<br>)<br>) Magistrate Judge Ashman<br>) |
| Defendants. | ) |

## DEFENDANTS' ANSWER AND COUNTERCLAIM TO PLAINTIFFS' COMPLAINT

Defendants, Vitalis Partners, LLC, Larry Harmon & Associates, P.A., KC Developments, LLC, Larry Harmon and Kenny Cruz, by and through their attorneys, Tressler, Soderstrom, Maloney & Priess, LLP, hereby submit their Answer and Counterclaim to Plaintiff's Complaint.

### ANSWER

### INTRODUCTION

1.  Ben Gordon, a professional basketball player for the Chicago Bulls, seeks recovery from his previous financial advisors and consultants who breached Mr. Gordon's trust and confidence by using his money for their advantage and by improperly taking a percentage of Mr. Gordon's income as a fee for services despite Mr. Gordon never agreeing to and expressing concern as to such an arrangement. Mr. Gordon's advisors, who were to be paid a set monthly fee to act as his trusted financial advisors and have control over his funds and bank accounts, unilaterally began charging Mr. Gordon an excess fee amounting to 1.5% of Mr. Gordon's total income. Further, Mr. Gordon's advisors used their position of trust to induce Mr. Gordon to apparently invest $1,000,000 in a real estate deal, but in reality his advisors used the money to acquire *their own* interest in this real estate and drew up a Promissory Note ("the Note") wherein the Defendants promised to re-pay the $1,000,000 they borrowed from Mr. Gordon to gain an interest in the real estate as well as interest at a rate of 17.5%. When Mr. Gordon discovered these indiscretions and demanded the repayment of his money, rather than simply paying back the money and agreeing to sever ties, his advisors refused to pay back the $1,000,000.

ANSWER:  Defendants deny the allegations contained in Paragraph 1 of Plaintiffs' Complaint.


PLAINTIFF'S EXHIBIT 2

## PARTIES

2. Ben Gordon is an individual and resident of Cook County, Illinois. Mr. Gordon makes his living as a professional basketball player and is employed by the Chicago Bulls.

ANSWER: Defendants admit the allegations contained in Paragraph 2 of Plaintiffs' Complaint.

3. BG4 Inc. ("BG4") is a Delaware corporation. Ben Gordon is the sole shareholder of BG4.

ANSWER: Defendants admit the allegations contained in Paragraph 3 of Plaintiffs' Complaint.

4. G7 Inc. ("G7") is a Delaware corporation. Ben Gordon is the sole shareholder of G7.

ANSWER: Defendants deny the allegations contained in Paragraph 4 of Plaintiffs' Complaint.

5. Ben Gordon, BG4 and G7 are sometimes collectively referred to as Mr. Gordon.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of Plaintiff's Complaint.

6. Vitalis Partners, LLC ("Vitalis") is a limited liability company organized under the laws of Delaware and its office is located at 2209 Plaza Drive, Suite 100, Rocklin California 95765. Vitalis' partners are Larry Harmon & Associates, P.A. and KCD Developments, LLC ("KCD"). Its shareholders are Larry Harmon and Kenny Cruz.

ANSWER: Defendants deny the allegation as to Vitalis' address, and admit the remaining allegations contained in Paragraph 6 of Plaintiffs' Complaint.

7. Larry Harmon & Associates, P.A. is a California corporation and its office is located at 2209 Plaza Drive, Suite 100, Rocklin California 95765.

ANSWER: Defendants deny the allegation as to Larry Harmon & Associates, P.A.'s address, and admit the remaining allegations contained in Paragraph 7 of Plaintiffs' Complaint.

8. KCD Developments, LLC is a limited liability company with its principal place of business in California.

ANSWER: Defendants admit the allegations contained in Paragraph 8 of Plaintiffs' Complaint.

9. Larry Harmon is an individual and a resident of the state of California.

ANSWER: Defendants admit the allegations contained in Paragraph 9 of Plaintiffs' Complaint.

10. Kenny Cruz is an individual and a resident of the state of California.

ANSWER: Defendants admit the allegations contained in Paragraph 10 of Plaintiffs' Complaint.

## THE CONSULTING AGREEMENT

11. On May 17, 2004 Ben Gordon executed an agreement drafted by Larry Harmon & Associates where in Larry Harmon and Larry Harmon & Associates (sometimes collectively referred to as "the Harmon Defendants") would act as his financial advisors and consultants and would specifically "provide detailed financial and tax consulting services for the duration of your playing career with the National Basketball Association ("NBA"). (The "Consulting Agreement," attached as Exhibit A).

ANSWER: Defendants admit the allegations contained in Paragraph 11 of Plaintiffs' Complaint.

12. The Consulting Agreement also provides that the Harmon Defendants had the "intent of being involved in every financial decision with [Mr. Gordon] so that we can appropriately gain any tax and/or financial advantages or savings on such expenditure or purchase."

ANSWER: Defendants admit the allegations contained in Paragraph 12 of Plaintiffs' Complaint.

13. The Consulting Agreement provides that during the duration of Mr. Gordon's rookie contract, he was to pay the Harmon Defendants $4,000 per month during his rookie season, $5,000 per month during his second season and $6,000 per month during his third and fourth seasons plus reasonable expenses.

ANSWER: Defendants admit the allegations contained in Paragraph 13 of Plaintiffs' Complaint.

14.   The Consulting Agreement makes no mention of the Harmon Defendants taking a percentage of Mr. Gordon's salary as a fee, but rather provides that after the expiration of the rookie contract, "we will evaluate the amount of work that we have performed on your account and provide you with a new engagement letter at that time."

ANSWER:   Defendants admit the allegations contained in Paragraph 14 of Plaintiffs' Complaint.

15.   As a result of the Consulting Agreement and the Harmon Defendants' control over Mr. Gordon's financial affairs, Mr. Gordon's paychecks from the Chicago Bulls were deposited and wired into Mr. Gordon's accounts which were controlled by the Harmon Defendants.

ANSWER:   Defendants deny the allegations contained in Paragraph 15 of Plaintiffs' Complaint.

16.   Further, as a result of the Consulting Agreement and the Harmon Defendants' control over Mr. Gordon's financial affairs, Larry Harmon would travel to Chicago, Illinois to discuss certain investment opportunities and Mr. Gordon's fee arrangement with the Harmon Defendants with Mr. Gordon.

ANSWER:   Defendants deny the allegations contained in Paragraph 16 of Plaintiffs' Complaint.

### THE PITCH TO INVEST IN A REAL ESTATE DEAL

17.   Sometime in or around August of 2006, Larry Harmon contacted Mr. Gordon and informed Mr. Gordon that he should invest $1,000,000 in a real estate investment that would pay a large dividend after 24 months.

ANSWER:   Defendants deny the allegations contained in Paragraph 17 of Plaintiffs' Complaint.

18.   Larry Harmon stated that he was going to invest $1,000,000 of his own money in this real estate deal because the prospects were so promising.

ANSWER:   Defendants deny the allegations contained in Paragraph 18 of Plaintiffs' Complaint.

19.   On Larry Harmon's advice and suggestion, Mr. Gordon gave his consent for Larry Harmon to investment $1,000,000 in this real estate deal. In order to effectuate Mr.

Gordon's $1,000,000 "investment," Larry Harmon convinced Mr. Gordon to allow him to take $750,000 of Mr. Gordon's funds and for Mr. Gordon to borrow the remaining $250,000.

ANSWER:   Defendants deny the allegations contained in Paragraph 19 of Plaintiffs' Complaint.

### THE DISCOVERY OF THE HARMON DEFENDANTS' IMPROPER CONDUCT

20.   In or around May of 2006, Larry Harmon contacted Mr. Gordon and indicated that he wanted to discuss changing the fee Mr. Gordon paid for the Harmon Defendants' services from the flat monthly fee to a percentage of Mr. Gordon's income.

ANSWER:   Defendants admit the allegations contained in Paragraph 20 of Plaintiffs' Complaint.

21.   Mr. Gordon never agreed either verbally or in writing to a change from the flat monthly fee to a percentage of his overall income as compensation for the Harmon Defendants' services. Rather, Mr. Gordon, on multiple occasions, expressed concerns and reservations about such an arrangement.

ANSWER:   Defendants deny the allegations contained in Paragraph 21 of Plaintiffs' Complaint.

22.   In the process of severing his relationship with the Harmon Defendants and transferring his funds to new advisors, it was discovered that rather than invest the $1,000,000 in real estate for the benefit of Mr. Gordon, the Harmon Defendants actually used Mr. Gordon's money to effectuate their own investment in this real estate deal.

ANSWER:   Defendants deny the allegations contained in Paragraph 22 of Plaintiffs' Complaint.

23.   In fact, and unbeknownst to Mr. Gordon, the Defendants papered the deal by drawing up a Promissory Note which evidenced Mr. Gordon's "loan" of $1,000,000 to the Harmon Defendants and the other Defendants for their investment in a real estate deal.

ANSWER:   Defendants deny the allegations contained in Paragraph 23 of Plaintiffs' Complaint.

24.   This led Mr. Gordon and his current advisors to demand repayment of the $1,000,000 used by the Harmon Defendants to effectuate the Defendants' investment into a real estate deal.

ANSWER:   Defendants deny the allegations contained in Paragraph 24 of Plaintiffs' Complaint.

25.   Further, in the process of severing his relationship with the Harmon Defendants and transferring his funds to new advisors, it was discovered that the Harmon Defendants had been charging Mr. Gordon a fee of 1.5% of his income for the services they provided for a number of months, despite failing to receive Mr. Gordon's authorization or consent to do so.

ANSWER:   Defendants deny the allegations contained in Paragraph 25 of Plaintiffs' Complaint.

## THE PROMISSORY NOTE

26.   On or about February 12, 2007, the Defendants apparently executed the Promissory Note ("the Note"), which is attached hereto as Exhibit B.

ANSWER:   Defendants admit the allegations contained in Paragraph 26 of Plaintiffs' Complaint.

27.   The Note memorializes that the Defendants "borrowed" $1,000,000 from Mr. Gordon and obligates the Defendants to re-pay the principle loan amount as well as interest at a rate of 17.5%.

ANSWER:   Defendants admit the allegations contained in Paragraph 27 of Plaintiffs' Complaint.

28.   The Note obligates the Defendants to pay Mr. Gordon $4,167.67 per month by the fifth day of each month as partial payment of the total 17.5% interest due.

ANSWER:   Defendants admit the allegations contained in Paragraph 28 of Plaintiffs' Complaint.

29.   The clause entitled "Default" provides:

> Borrower will be in default if Borrower fails to make any payment within forty five (45) days of its due date. A late charge in the amount of three percent (3%) of any payment required to be made hereunder shall be imposed on each such payment not received by the lender within fifteen (15) days after it is due. The late charge is not a penalty, but liquidated damages to defray administrative and related expenses due to such late payment. The late charge shall be immediately due and payment shall by paid by the Borrower to Lender without notice or demand.

ANSWER:   Defendants admit the allegations contained in Paragraph 29 of Plaintiffs' Complaint.

30.   The clause entitled "Expenses" provides that:

All parties liable for the payment of this Note agree to pay the Lender all costs incurred by it in connection with the collection of this Note. Such costs include, without limitation, fees for the services of counsel and legal assistants (including bankruptcy counsel fees and expenses) employed to collect this Note, whether or not a suit is brought, and whether incurred in connection with collection, trial, appeal or otherwise.

ANSWER:   Defendants admit the allegations contained in Paragraph 30 of Plaintiffs' Complaint.

31.   The clause entitled "Lender's Rights" provides that:

Upon default, Lender may declare the entire unpaid principle on this Note and all accrued unpaid costs and fees immediately due, without notice, and then Borrower will pay that amount. Upon default, or if this Note is not paid at final maturity, lender, at its option, may add any unpaid accrued costs and fees to principal and such sum will bear interest therefrom until paid at Eighteen Percent (18%) (the "Default Rate").

ANSWER:   Defendants admit the allegations contained in Paragraph 31 of Plaintiffs' Complaint.

## COUNT I – BREACH OF CONRACT (ALL DEFENDANTS)

32.   Mr. Gordon re-alleges and incorporates by reference Paragraphs 1 through 31 as and for paragraph 32.

ANSWER:   Defendants reallege and incorporate by reference their responses to Paragraphs 1 through 31 above as their response to Paragraph 32.

33.   On February 12, 2007, the Defendants executed the Note, thereby contractually binding them to perform all of the obligations expressed in the Note, including the making of monthly payments to Mr. Gordon by the fifth day of each month thereafter in the amount of $4,167.67.

ANSWER:   Defendants admit the allegations contained in Paragraph 33 of Plaintiffs' Complaint.

34. The Defendants failed to make any of the $4,167.67 (sic) in a timely manner in accordance with the express terms of the Note, and specifically for the months of March, April, May, June, and July of 2007.

ANSWER: Defendants deny the allegations contained in Paragraph 34 of Plaintiffs' Complaint.

35. On July 31, 2007 Mr. Gordon's current advisor wrote to Larry Harmon and indicated that the Note was in default and demanded repayment of the entire unpaid $1,000 (sic) principal balance, all accrued interest, costs and late fees.

ANSWER: Defendants admit the allegations contained in Paragraph 35 of Plaintiffs' Complaint.

36. At that time, the March, April, May, June and July $4,167.67 interest payments were all over forty-five days delinquent. Accordingly, the note was in fact is in default in accordance with the Note's Default clause when Mr. Gordon, through his current advisor, exercised his rights under the Lender's Rights Clause.

ANSWER: Defendants deny the allegations contained in Paragraph 36 of Plaintiffs' Complaint.

37. To date, and despite Mr. Gordon having exercised his rights to declare a default under the Lender's rights clause, the Defendants have refused to return the $1,000,000 principal loan amount to Mr. Gordon.

ANSWER: Defendants deny the allegations contained in Paragraph 37 of Plaintiffs' Complaint.

### COUNT II BREACH OF FIDUCIARY DUTY (HARMON DEFENDANTS)

38. Mr. Gordon re-alleges and incorporates by reference Paragraphs 1 through 37 as and for paragraph 38.

ANSWER: Defendants reallege and incorporate by reference their responses to Paragraphs 1 through 37 above as their response to Paragraph 38.

39. At all times pertinent, Mr. Gordon placed his complete trust and confidence in the Harmon Defendants in regards to his financial, investment, tax and business affairs. In particular, and without limitation:

    a.    The Harmon Defendants had vastly greater business experience than Mr. Gordon;

    b.    The Harmon Defendants had control over Mr. Gordon's monies and accounts;

    c.    Mr. Gordon disclosed complete and confidential personal financial information to the Harmon Defendants;

    d.    Mr. Gordon relied heavily on the Harmon Defendants for advice and assistance in his financial and business affairs;

    e.    Mr. Gordon entrusted the Harmon Defendants to invest purportedly $1,000,000 in a real estate deal based upon the Harmon Defendants' urging; and

    f.    The Harmon Defendants acted as Mr. Gordon's agent in regards to his financial and business affairs.

**ANSWER:** Defendants deny the allegations contained in Paragraph 39 of Plaintiff's Complaint.

40. As a result of the trust and confidence reposed by Mr. Gordon, the Harmon Defendants gained influence and superiority over Mr. Gordon in regards to his financial, investment, tax and business affairs.

**ANSWER:** Defendants deny the allegations contained in Paragraph 40 of Plaintiffs' Complaint.

41. As a result of said trust and confidence Mr. Gordon placed with the Harmon Defendants and the Harmon Defendants knowledge that Mr. Gordon placed his trust and confidence in them; the Harmon Defendants owed a fiduciary duty to Mr. Gordon to fully disclose and accurately represent all facts relating to Mr. Gordon's finances, investments, taxes and business matters, as well as the facts regarding the fees charged by the Harmon Defendants.

**ANSWER:** Defendants deny the allegations contained in Paragraph 41 of Plaintiff's Complaint.

42. The Harmon Defendants further owed to Mr. Gordon a duty to act in Mr. Gordon's best interest and with good faith, loyalty and trust.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42 of Plaintiff's Complaint.

43. The Harmon Defendants breached said fiduciary duties owed to Mr. Gordon in one or more of the following respects:

   a. The Harmon Defendants charged Mr. Gordon an excessive fee amounting to 1.5% of his income without obtaining his authorization or consent;

   b. The Harmon Defendants charged Mr. Gordon a fee amounting to 1.5% of his income despite Mr. Gordon's execution of the Consulting Agreement which set only a monthly fee to be paid to the Harmon Defendants;

   c. The Harmon Defendants unilaterally changed their fee structure from a set monthly amount to a percentage of Mr. Gordon's overall income;

   d. The Harmon Defendants failed to disclose the true nature of the use of Mr. Gordon's $1,000,000 investment in the real estate deal;

   e. The Harmon Defendants used $1,000,000 of Mr. Gordon's money to obtain their own interest in a real estate deal;

   f. The Harmon Defendants misrepresented to Mr. Gordon the actual use of the $1,000,000 that was purportedly to be used for Mr. Gordon's acquiring an interest in real estate; and

   g. The Harmon Defendants refused to return the $1,000,000 principle loan amount to Mr. Gordon despite being in default under the Promissory Note which they had drafted.

ANSWER: Defendants deny the allegations contained in Paragraph 43 of Plaintiffs' Complaint.

44. One or more of the above wrongful acts or omissions and breaches of fiduciary duties committed by the Harmon Defendants was a direct and proximate cause of the injuries described herein and suffered by Mr. Gordon.

ANSWER: Defendants deny the allegations contained in Paragraph 44 of Plaintiffs' Complaint.

45. But for the wrongful acts or omissions and breaches of fiduciary duty committed by Harmon Defendants, Mr. Gordon would not have agreed to allow the Harmon Defendants to use $1,000,000 of his funds to purportedly gain an interest in a real estate deal; would not have been charged an excessive fee; and would not have unknowingly paid to the Harmon Defendants a percentage of his total income.

ANSWER: Defendants deny the allegations contained in Paragraph 45 of Plaintiffs' Complaint.

## AFFIRMATIVE DEFENSES

1. Plaintiffs' claims are barred by the doctrine of acquiescence.

2. Plaintiffs' claims are barred by the doctrine of waiver.

3. Plaintiffs' claims are barred by the doctrine of estoppel.

4. Plaintiffs' claims are barred by the doctrine of laches.

5. Plaintiffs' claims are barred because Defendants had the legal right to act in the manner that they did.

6. Plaintiff's claims are barred by Plaintiffs' failure to mitigate their alleged damages.

WHEREFORE, Defendants, Vitalis Partners, LLC, Larry Harmon & Associates, P.A., KC Developments, LLC, Larry Harmon and Kenny Cruz respectfully request this Court enter judgment in their favor and against Plaintiffs, and that Defendants be awarded their attorneys' fees, costs and for such further relief that this Court deems just and appropriate.

## COUNTERCLAIM

Counter-Plaintiff, Larry Harmon & Associates, P.A., by and through its attorneys, for its Counterclaim against Ben Gordon alleges as follows:

## PARTIES

1. Larry Harmon & Associates, P.A. ("LHA") is a California corporation and its office is located at 2250 Douglas Blvd, Suite 160, Roseville, CA 95661.

2. Ben Gordon ("Gordon") is an individual and resident of Cook County, Illinois. Gordon makes his living as a professional basketball player and is employed by the Chicago Bulls.

3. Jurisdiction is proper under 28 U.S.C. § 1367 because the claims arise out of the same facts and nucleus of events as the Complaint in this matter.

4. On May 17, 2004 Gordon entered into an agreement ("the Agreement") providing that LHA would act as his financial advisors and consultants for the duration of his playing career with the National Basketball Association ("NBA").

5. The Agreement provides that during the duration of Gordon's rookie contract, he was to pay LHA $4,000 per month during his rookie season, $5,000 per month during his second season and $6,000 per month during his third and fourth seasons plus reasonable expenses. Subsequently, in 2006 LHA and Gordon agreed that instead of paying LHA a flat monthly fee, Gordon would pay LHA a fee amounting to 1.5% of his total income for its services.

6. LHA has fully performed any and all of its obligations, including any conditions precedent, under the Agreement.

7. In 2007 Gordon purported to terminate LHA's services. However, as Gordon remained at that time an active player in the NBA, Gordon had no right to terminate LHA's services.

8. Gordon's purported termination of LHA's services constituted a material breach of the Agreement.

9. As a direct result of Gordon's breach of contract, LHA has sustained significant financial damage.

WHEREFORE, Counter-Plaintiff, Larry Harmon & Associates, P.A. respectfully requests this Court enter judgment in its favor and against Counter-Defendant in an amount to be proved at trial, and that it be awarded its attorneys' fees, costs and for such further relief that this Court deems just and appropriate.

### JURY DEMAND

Defendants/Counter-Plaintiff demand trial by jury as to all claims raised in Complaint and the Counterclaim.

> VITALIS PARTNERS, LLC, LARRY HARMON & ASSOCIATES, P.A., KC DEVELOPMENTS, LLC, LARRY HARMON and KENNY CRUZ
>
> By:  /s/James K. Borcia
>      One of Their Attorneys

James K. Borcia
David O. Yuen
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6399
(312) 627-4000

UNITED STATED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BEN GORDON, G7, INC. and BG4, INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 07 C 6807 |
| | ) |
| VITALIS PARTNERS, LLC; LARRY HARMON | ) Judge Kocoras |
| & ASSOCIATES, P.A.; KCD DEVELOPMENTS, | ) |
| LLC; LARRY HARMON and KENNY CRUZ, | ) Magistrate Judge Ashman |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2008, I electronically filed **Defendants' Answer and Counterclaim to Plaintiffs' Complaint** with the Clerk of Court using the CM/ECF system, which will send notification of such filings(s) to the following:

James Davidson
Spellmire & Sommer
77 West Wacker Drive
Chicago, IL  60601

VITALIS PARTNERS, LLC, LARRY HARMON &
ASSOCIATES, P.A., KC DEVELOPMENT COMPANY,
LLC, LARRY HARMON and KENNY CRUZ

By:   /s/James K. Borcia
One of Their Attorneys

James K. Borcia
David O. Yuen
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6399
(312) 627-4000