IN THE UNTIED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BEN GORDON, G7 DEVELOPMENT,      )
INC., and BG4, INC.              )
                                 )
         Plaintiff,              )
                                 )
vs.                              )
                                 )
VITALIS PARTNERS, LLC; LARRY     )     No.  07 C 6807
HARMON & ASSOCIATES, P.A.; KC    )
DEVELOPMENT, CO., LLC; LARRY     )
HARMON; and KENNY CRUZ           )
                                 )
         Defendants.

## COUNTER-DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS COUNTS II, III AND IV OF COUNTER-PLAINTIFFS' COUNTERCLAIM

Counter-Defendant, BEN GORDON ("Gordon"), through his attorneys, SPELLMIRE & SOMMER, and pursuant to Federal Rules of Civil Procedure 12(b)(6), 9 and 8, submits this Memorandum in Support of his Motion to Dismiss Counts II – IV of Counter-Plaintiffs Larry Harmon and Larry Harmon & Associates, P.A.'s (collectively "Harmon") Counterclaim.

## I.    INTORDUCTION

Harmons' claims for Defamation, Commercial Disparagement and Tortious Interference with Prospective Business Advantage ("Tortious Interference") are meant as nothing more than intimidation and are simply woefully inadequate.  These counts are all based entirely upon the Defendants' bald allegations that "upon information and belief" Gordon communicated some unspecified allegations contained in his Complaint to some unidentified third parties and that Harmon has been harmed as a result.  However, these claims are fatally flawed because of Harmons' failures to identify a single specific defamatory statement, a single specific individual that heard or read a defamatory statement or a single individual who severed an existing business

relationship with Harmon because of hearing or reading a defamatory statement. Accordingly, these counts must be dismissed with prejudice for failure to state a claim.[1]

## II.    BASIC FACTS AND PROCEDURAL POSTURE

The following basic facts are gleaned from Gordon's Amended Complaint, Harmons' Counterclaim or are otherwise matters of public record.

In September of 2007, Gordon filed suit against Harmon and others in the Circuit Court of Cook County, Illinois alleging Breach of Contract and Breach of Fiduciary Duty. Gordon alleged that Harmon was his financial advisor since 2004 and that in 2007 Gordon invested $1,000,000 in a California real estate deal at Harmon's urging. Gordon alleged that Harmon failed to disclose that this investment was actually a loan to Harmon and their business partners. Gordon sued Harmon for breach of a Promissory Note related to the real estate deal for the alleged failure to timely make the required monthly interest payments. Gordon also sued Harmon for breach of fiduciary duty and alleged that Harmon failed to disclose and explain his interest in the real estate deal and the nature of Gordon's loan as well that Harmon improperly and unilaterally changed the fee being charged to Gordon for Harmons' services.

The Defendants removed this action to this Court. In response to Gordon's original Complaint, Harmon filed a one count Counterclaim for breach of contract. That count is the subject of an already pending motion to dismiss and is not again addressed herein. Gordon later filed an Amended Complaint which changed the names of one plaintiff and one defendant. In response to the Amended Complaint, Harmon added three new counts to their Counterclaim including, Defamation, Commercial Disparagement and Tortious Interference in addition to the previously pled Breach of Contract count. In all three of the new counts, Harmon alleges that

---

[1] Count I of the Harmon Defendants' Counterclaim for Breach of Contract is currently the subject of a previously filed and pending motion to dismiss.

Gordon has communicated some unspecified allegations contained in his Complaint against Harmon to unidentified third parties and that Harmons' business has suffered in some way as a result. Harmons' Answer to the Amended Complaint, Affirmative Defenses and Counterclaim are attached hereto as Exhibit 1.

### III.    LEGAL STANDARD FOR 12(b)(6) MOTION TO DISMISS

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim rather than the substantive merits of a claim. *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Dist. 1998). This rule "allows a party to assert as a defense to any claim for relief the failure to state a claim upon which relief can be granted." *Id.* Rule 12(b)(6) motions are to take into account the notice pleading requirements of FRCP Rules 8 and the particularity pleading requirements of Rule 9 when applicable. *Id.* Here, it is clear that Harmon has failed to state a claim for Defamation, Commercial Disparagement and Tortious Interference against Gordon.

### IV.    CALIFORNIA LAW APPLIES TO THESE CLAIMS

Binding law establishes that California substantive law applies to these claims for Defamation, Commercial Disparagement and Tortious Interference. A federal court sitting in diversity, as is the case here, applies the choice of law rules of the state in which it sits. *Cook*, at 329. Accordingly, this Court must apply Illinois choice of law rules and analysis. *Id.*

That California law applies to the Defamation and Commercial Disparagement claims is not open to debate. The Seventh Circuit has repeatedly held that according to Illinois jurisprudence, the substantive law of the victim's domicile <u>must</u> be applied to multi-state defamation claims. *Cook*, at 329; *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 916 (7th Cir. 1994). In *Rice*, the court unequivocally held that in multi-state defamation cases, "<u>the applicable</u>

law is that of the victim's domicile *period*." *Rice*, at 916.  Subsequently, in *Cook*, the Seventh

Circuit reaffirmed this absolute rule set forth in *Rice*.  *Cook*, at 329.

In *Cohabaco Cigar Co. v. U.S. Tobacco Co.*, 1998 WL 773696 (N.D.Ill. 1998), the

Honorable Judge Kocoras held that the choice of law analysis set forth in *Rice* and *Cook* for

multi-state defamation claims also applies to claims for commercial disparagement.  *Id.* at *10.

This Court stated:

> In multi-state defamation cases, Illinois indicates 'that the applicable law is that of
> the victim's domicile, *period.*'  We apply Illinois law to such multi-state
> defamation cases because the actionable defamation and the plaintiff's injuries
> may occur in several states, making choice of law analysis difficult.  We think the
> same rationale applies to claims of commercial disparagement, particularly in
> matters, such as the case at bar, in which the face of the complaint does not
> specify where the alleged disparagement occurred and where the plaintiff suffered
> injuries.  Because Cohabaco is the alleged 'victim' of the commercial
> disparagement, we apply the law of Cohabaco's domicile.  *Id.* at *10.  (Internal
> citations omitted; Emphasis added).

Accordingly, because it is undisputed that Larry Harmon and Larry Harmon &

Associates, P.A. are both domiciled in California, that state's substantive law must be applied to

the Defamation and Commercial Disparagement claims. (Ex. 1, pg. 12 ¶¶ 1-2).

Although the same bright-line rule is not applicable to the Tortious Interference claim, a

slightly more in-depth analysis reveals that California substantive law is also to be applied to this

claim.  Illinois employs the "most significant relationship" test to determine which jurisdiction's

substantive law is to be applied to a claim for tortious interference with prospective economic

advantage.[2]  *Medline Industries, Inc. v. Maersk Medical Ltd.*, 230 F.Supp.2d 857, 863-64 (N.D.

Ill. 2002).  Under this test, the court is to consider:  (1) the place of the injury; (2) the place of the

tortious conduct; (3) the domicile of the parties; and (4) the place where the relationship between

---

[2] The Harmon Defendants have captioned Count IV as Tortious Interference with Prospective Business Advantage.
However, both California and Illinois courts refer to the tort as Tortious Interference with Prospective Economic
Advantage.

the parties is centered. *Id.* The location of the injury is the most important factor and "controls unless Illinois has a more significant relationship with the occurrence and with the parties." *Medline Industries, Inc.,* at 864 (quoting, *Esser v. McIntyre,* 661 N.E.2d 1138, 1141 (Ill. 1996)).

Courts have held that the law of the location of the alleged injury should even be applied when other factors may support application of the law of another jurisdiction. *Id.* at 864; *St. Charles Riverfront Station, Inc. v. Empress Casino Joliet Corp.,* 5 F.Supp.2d 592, 594 (N.D. Ill. 1998). For example, in *Medline,* the court held that even though the plaintiff did not provide sufficient information in its to complaint to address all of the factors and that some of the factors may support applying the law of a different jurisdiction, the court applied the law of Illinois because it was the location of the injury. The court stated:

> The parties have not provided sufficient information for the court to assess the other factors of the most significant relationship test. However, the most important factor, the place of the injury, weighs in favor of Illinois. Therefore, because the place of injury is Illinois, the court will apply Illinois law to Medline's tortious interference claim. *Medline Industries, Inc.,* at 864.

The court also noted that in cases where the alleged loss is of customers or trade, the location of the injury is the plaintiff's principal place of business and state of incorporation. *Id.*

Accordingly, this Court must apply the substantive law of California to the Tortious Interference claim. First, and most importantly, the place of the alleged injury is California as Larry Harmon is a California resident and Larry Harmon & Associates, P.A. is a California Corporation with its sole office located in Roseville, California. (Ex. 1, pg. 12 ¶¶ 1-2). Further, the remaining less important factors do not weigh in favor of applying Illinois law. The Counterclaim does not specify where the alleged tortious act occurred. Further, although Gordon is a resident of Illinois, the Counter-Plaintiffs are both domiciled in California. Finally, the former relationship between the parties was centered in both Illinois and California.

Accordingly, because the place of the alleged injury is California and the other factors do not heavily weigh in support of the application of Illinois law, this Court must apply California substantive law to the Tortious Interference claim.

## V.    HARMON HAS FAILED TO STATE A CLAIM FOR DEFAMATION.

Under California law, the elements of defamation are (1) an intentional publication to a third person; (2) of a statement of fact; (3) that is false and unprivileged; and (4) has a tendency to injure or cause special damages.  *Smith v. Maldonado,* 72 Cal.App.4[th] 637, 645 (Cal.App. 1999).  Here, Harmons' complaint is completely devoid of allegations sufficient to state a claim for defamation under California law.

### A.    Harmon has Failed to Identify the Substance of any Alleged Defamatory Statement.

In *Vantassell-Martin v. Nelson,* 741 F.Supp. 698 (N.D. Ill. 1990), the court adopted the *in haec verba* pleading requirement for defamation actions.  *Id.* at 707.  The court began by noting that even though defamation is a state law claim, "because rules as to the sufficiency of pleadings are procedural rather than substantive, under *Erie* this court looks to the federal rules of pleading."  *Id.*  Thus, the court stated that the law requires:

> Plaintiffs alleging libel or slander to recite the precise language alleged to be defamatory.  In the absence of such specific allegations, dismissal of a complaint is appropriate.  *Id.*

It has since been held that the *in haec verba* requirement can be satisfied in some circumstances if the exact wording of the defamatory statement is not quoted as long as the substance of the statement is sufficiently alleged.  *Pelech v. Klaff-Joss, LP* 828 F.Supp. 525, 534 (N.D. Ill. 1993).

The rationale behind the *in haec verba* requirement is that a defendant is entitled to receive sufficient information to defend itself and that the court is able to make a determination of whether the statement could ever be defamatory.  *Pelech,* at 534.  Both Illinois and California

state courts have adopted extremely similar rules in order to achieve the same policy. Illinois courts require that:

> A complaint for defamation must set forth the words alleged to be defamatory clearly and with particularity. The rule allows the defendant to properly formulate their answers and affirmative defenses and to provide the court with the ability to meaningfully review the statements. *Kruger v. Lewis*, 794 N.E.2d 970, 972 (Ill.App. 2003).

Similarly, California law provides:

> "Under California law, although a plaintiff need not plead the allegedly defamatory statement verbatim, the allegedly defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement." *Jacobson v. Schwarzenegger*, 357 F. Supp.2d 1198, 1215 (C.D. Cal. 2004). "While the exact words or circumstances ... need not be alleged to state a claim for defamation, the substance of the defamatory statement must be alleged." *Silicon Knights, Inc. v. Crystal Dynamics, Inc.* 983 F.Supp. 1303, 1314 (N.D. Cal. 1997).

Here, Harmons' allegations related to any "defamatory statements" are drastically insufficient and are as follows:

16.    In 2007, Gordon purported to terminate LHA's services and filed this lawsuit against LHA, accusing LHA of numerous acts of malfeasance, along with claims for breach of contract and breach of fiduciary duty.

17.    Upon information and belief, Gordon communicated <u>the allegations of his Complaint with third parties</u>.

18.    These statements were false. (Ex. 1, pgs. 13-14 ¶¶ 16-18). (Emphasis added).

These conclusory allegations fall far short of properly pleading the substance of any defamatory statement. In short, it is utterly impossible for Gordon to prepare an answer and affirmative defenses or for this court to be able to determine if any statements are defamatory based upon the allegation that "Gordon communicated the allegations of his Complaint with third parties." Simply alleging that one or more of the allegations in a filed complaint (a public document) are false and that the plaintiff (Gordon) <u>may have</u> communicated one or more of

those unspecified allegations to a third party does not come close to satisfying the applicable defamation pleading requirements. Accordingly, the Defamation count must be dismissed.

**B.    Harmon Fails to allege to Whom a Defamatory Statement Was Made.**

Amazingly, Harmon attempts to sue Gordon for defamation without identifying one single individual to whom an alleged defamatory statement was made. California law makes clear that a claim for defamation must clearly allege a publication of the purported defamatory statement to an identifiable third party. *See, Shively v. Bozanich,* 7 Cal. Rptr.3d 576, 583 (Cal. 2003). (Illinois has the same requirement. *Whitby v. Associates Discount Corp.* 207 N.E.2d 482, 484 (Ill.App. 1965)).

In *Keiser v. Lake County Superior Court,* 2005 WL 3370006 (N.D.Cal), the District court dismissed a California defamation claim where the plaintiff could not identify to whom an alleged defamatory statement was made. *Id.* at *14. The plaintiff alleged that the defendants had defamed her by expressing to "third persons and the community" that she had violated company policies, was a poor performer, that she deserved discipline, had committed serious acts of misconduct and was dishonest. *Id.* In dismissing the complaint and noting that the plaintiff's allegations were not satisfactory under FCRP 8(a), the court stated:

> Here, it is impossible to determine which of the five Defendants Plaintiff is claiming made defamatory statements, when the statements were made, the form of the defamatory statement, or to whom the defendants made the statements. Indeed, in her Complaint Plaintiff acknowledges that she does not know when the purportedly defamatory publications were made, and fails to identify to whom they were published. *Id.* at *14.

In this case it is clear that not only does Harmon lack knowledge of any specific "defamatory" statement made by Gordon, but he also certainly has no knowledge of the identity of a third party to whom a hypothetical defamatory statement was made. In the Defamation count, Harmon simply alleges that Gordon communicated some unspecified allegations

contained in his Complaint to "third parties." This is simply insufficient to satisfy the publication element of defamation. The Defamation claim must be dismissed.

     **C.**    **Harmon's Failure to Identify a "Defamatory" Statement Mandates that the "False and Unprivileged" Element has not been Met.**

The fact that Harmon has not satisfied that "false and unprivileged" requirement is a matter of common sense that needs little explanation. As stated above, Harmon simply alleges that Gordon repeated some unspecified allegations in his Complaint to unspecified third parties. However, Harmon has admitted many of the allegations in the Complaint. Thus, it is impossible to determine if a false statement has been alleged.

Further, it is a universally accepted principle of law that allegations contained in a complaint, even if proven false, cannot be give rise to a defamation action because there is an unconditional litigation privilege. As one court has stated:

> The policy behind allowing such a litigation privilege is the same in federal courts as it is in California and Illinois; it provides litigants with an unfettered access to courts, and the opportunity to fully litigate disputes without fear of facing subsequent derivative court actions. *NSB Technologies, Inc. v. Specialty Direct Marketing, Inc.* 2004 WL 1918708 at *4 (N.D. Ill. 2004).

Accordingly, alleging that someone has filed a complaint and that some of the allegations are false does not satisfy the "unprivileged" requirement. Harmon has simply failed to state a claim for defamation.

## VI.    HARMON HAS FAILED TO STATE A CLAIM FOR COMMERCIAL DISPARAGEMENT.

For the same and additional reasons that Harmon failed to state a claim for Defamation, the Commercial Disparagement claim is also insufficient. California courts appear to recognize a cause of action for commercial disparagement and also refer to the tort under the names "product disparagement," "business disparagement" and "business defamation." *See California*

*Scents v. Surco Products, Inc.,* 406 F.3d 1102, 1104-09 (9th Cir. 2005); *Isuzu Motors Limited v. Consumers Union of United States,* 12 F.Supp.2d 1035 (C.D. Cal. 1998).

In California, the elements of this tort are: (1) publication; (2) of a false and disparaging statement of fact about the product or services of a plaintiff; (3) made with either knowledge of falsity or reckless disregard of its truth or falsity; (4) with intent to harm the plaintiff's business interests; and (5) <u>specific damages.</u> *California Scents,* at 1109. The *California Scents* court went on to explain the nature of the tort of commercial disparagement as follows:

> To support a claim of commercial disparagement, a plaintiff has the burden of establishing that the defendant made untrue or misleading statements which disparage the quality of the plaintiff's product or services. *Id.*

Further, California courts have recognized that defamation and commercial disparagement are similar, but that defamation goes to personal character and reputation of the plaintiff and commercial disparagement speaks to the quality of business goods or services and only exists where actual pecuniary damage has been suffered. *Isuzu Motors Limited,* at 1044. Finally, and unlike certain defamation claims, special damages must be specifically pled in accordance with Federal Rule of Civil Procedure 9(b). *Id.* at 1047-48.

**A.      Harmon Has Failed to Identify a Disparaging Comment or to Identify to Whom a Disparaging Statement was made.**

For the same reasons Harmon has failed to state a claim for Defamation, Harmon has also failed to state a claim for Commercial Disparagement. As has been repeated by both the *California Scents* and *Isuzu Motors Limited* courts, numerous Illinois courts, and this very Court in *Cohabaco Cigar Co.,* the torts of Defamation and Commercial Disparagement are similar in nature. Further, in *Cohabacco Cigar Co.,* this Court held that a commercial disparagement claim should be dismissed if it does not contain a "definite assertion of the disparaging statements" and the "time and place of the alleged statements." *Id.* at *11.

As argued at length above, Harmon has not listed one specific alleged defamatory or disparaging statement nor has he stated to whom such a statement was made, much less the time and place of such a statement. Rather Harmon has simply alleged that Gordon filed a complaint and that "upon information and belief" Gordon has communicated these allegations to some unknown "third parties." This is of course insufficient and Harmon has failed to state a claim for Commercial Disparagement.

### B.     Harmon has Failed to Plead Special Damages with Particularity in Accordance with FRCP Rule 9(b).

Pleading <u>specific damages</u> is a requirement for stating a claim for Commercial Disparagement and similar torts in California. *California Scents,* at 1109. In *Isuzu Motors Limited,* the court explicitly held that California claims of commercial and product disparagement are subject to the requirement that special damages be pled in Federal courts in accordance with Federal Rule of Civil Procedure 9(g). The court explicitly held:

> Accordingly, plaintiff must specifically plead special damages in accordance with Fed.R.Civ.P. 9(g) in order to state a claim for product disparagement under California law. *Isuzu Motors Limited,* at 1047.

The court noted that in order to satisfy this requirement the plaintiff:

> should have alleged facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication and facts showing that such losses were the natural and probable result of the publication. *Id.*

Here, Harmons' sole allegation of damage contained in the Commercial Disparagement count falls far short of the required level of specificity of Rule 9(g) and as outlined by the California law cited above. Harmon simply alleges:

> 26.     LHA and Harmon have sustained substantial damages as a result of Gordon's publication of the foregoing disparaging statements, including but not limited to a substantial decrease in business since the statements were made. (Ex. 1. pg. 15, ¶ 26).

Accordingly, in addition to utterly failing to identify one single specific disparaging statement, one singe individual who heard or read a disparaging statement or even the time, place and method of when and how a disparaging statement was made, Harmon has completely ignored the requirement that damages for Commercial Disparagement be pled with specificity under Rule 9. Accordingly, Harmon has failed to state a claim for Commercial Disparagement.

## VII.    HARMON HAS FAILED TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE UNDER CALIFORNIA LAW.

Here, it is clear that Harmons' allegations of Tortious Interference with Prospective Business Advantage are woefully deficient and simply fail to state a claim. First, Gordon incorporates all of the reasons stated above as reasons for dismissal of the Tortious Interference claim. Harmon has simply failed to identify any sort of defamatory or disparaging statement made by Gordon to a third party. The Tortious Interference claim is predicated solely on the allegations of these phantom "defamatory" statements. Accordingly, the claim should be dismissed for failure to state a claim. Additionally, Harmon has failed to state a Tortious Interference claim against Gordon for a number of additional independently sufficient reasons discussed herein.

Under California law, the elements of tortious interference with prospective economic advantage are "(1) an economic relationship between the plaintiff and some third party; (2) the defendant's knowledge of that relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; and (4) economic harm to the plaintiff proximately caused by the acts of the defendant." *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.* 479 F.3d 1099, 1107-1108 (9th Dist. 2007)(quoting, *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003)). Harmons' allegations fail to satisfy a number of these required elements.

### A.    Harmon Has Not Alleged an Existing Economic Relationship with an Identifiable Third-Party.

The California Supreme Court has made clear that in order to satisfy the first required element of this tort, a plaintiff must allege an <u>existing</u> economic relationship with some <u>identifiable</u> third party rather than the mere possibility that an economic relationship would have arisen with some third-party in the future.  The California Supreme Court stated:

> First, a plaintiff that wishes to state a cause of action for this tort must allege the existence of an economic relationship with some third party that contains the probability of future economic benefit to the plaintiff.  This tort 'protects the expectation that the relationship eventually will yield the desired benefit, <u>not necessarily the more speculative expectation that a potentially beneficial relationship will arise.</u>'  *Korea Supply*, at 957 (quoting, *Westside Center Associates v. Safeway Stores 23, Inc.*, 42 CalApp.4th 507, 524 (Cal.App. 1996).

In *Westside Center Associates*, the court thoroughly discussed California law and rejected the plaintiff's argument that it could establish the first element of the tort by alleging a hypothetical future relationship that did not materialize due to the alleged interference. *Westside Center Associates*, at 522-28.  In that case, the plaintiffs asserted a market interference theory by claiming that the defendant "interfered in its relationship with the class of all potential buyers for its property and thereby reduced the property's market value." *Id.* at 523.  The court flatly rejected the notion that this allegation was sufficient to state a claim and stated that in California:

> the interference tort applies to interference with *existing* non-contractual relations which hold the promise of future economic advantage. *Id.* at 524.

The court also reasoned that the tort's second requirement, that the defendant have actual knowledge of the relationship, necessarily mandates that the plaintiff plead and prove an already existing relationship. *Id.* at 525-26.  Accordingly, the court held that the plaintiffs' tortious interference claim was "insufficient as a matter of law." *Id.* at 528.

Here, Harmons' claim fails as a matter of law because it only addresses hypothetical future relationships, rather than one single existing economic relationship. In ¶ 29 of the Tortious Interference count, Harmon alleges:

> LHA and Harmon had a reasonable expectation of entering into valid business relationships with clients, primarily athletes in the United States. (Ex. 1 pg. 15).

This allegation does not address any existing relationships with a specific third-party as is required by California law; but rather solely contemplates that future hypothetical relationships with an unnamed class of "United States athletes" may have arisen. Accordingly, the Tortious Interference count fails and must be dismissed as a matter of law pursuant to Rule 12(b)(6).

**B.**     **Harmon Has Not Pled that Gordon Had Actual Knowledge of an Existing Business relationship.**

As mentioned by the *Westside Center Associates* court, this element goes hand-in-hand with the first required element of the tort. *Id.* at 525-26. Because Harmon has not pled the existence of an economic relationship with an identifiable third party, he has necessarily failed to allege that Gordon had actual knowledge of an existing relationship with an identifiable third party. *Id.* at 525-26; *See also, Korea Supply,* at 957. Accordingly, Count IV must be dismissed.

**C.**     **Harmon Has Failed to Allege that Gordon Engaged in any Wrongful Conduct Separate and Apart from the Alleged "Interference."**

In California, in order to establish the third required element of the claim, the plaintiff must "allege an act that is wrongful independent of the interference itself." *CRST Van Expedited Inc.,* at 1108. The "independently wrongful act" requirement provides that:

> a plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful by some measure beyond the fact of the interference itself. *Id.*

In *Korea Supply,* the California Supreme Court provided guidance as to the substantive nature of the "independently wrongful act" requirement by holding that the defendants' alleged

14

actions of bribery and the offer of sexual favors was sufficient because the allegations, if proven, would amount to a violation of the Foreign Corrupt Practices Act. *Korea Supply,* at 958. Similarly, in *CRST Expedited Inc.,* the court held that an alleged violation of the California Unfair Competition Law (UCL) was sufficient to establish the "independently wrongful act" requirement. However, in *Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.* 138 Cal. App.4[th] 1215,1220-21 (Cal.App. 2006), the court held that the complaint was properly dismissed because an allegation of simple violations of trade rules was not an "independently wrongful act" sufficient to state a claim of tortious interference. *Id. at* 1225-26.

In this case, the Defendants have simply not alleged any "independently wrongful act." In their Counterclaim, the only alleged "wrongful act" committed by Gordon was the alleged communication of one or more unspecified allegation in the Complaint to an unidentified third party. (Ex. 1, pgs. 13-14 ¶¶ 17-18). Accordingly, this alleged "communication" is the actual alleged interference and does not amount to a independent wrongful act. Further, Harmon does not allege that Gordon violated any trade or business laws or any other California, Illinois or federal law. Thus, Harmon has failed to state a claim for Tortious Interference.

## VIII.   CONCLUSION

Based upon the foregoing arguments and cited authorities, the Gordon respectfully request that this Court dismiss with prejudice Counts II, III and IV of the Counter-Plaintiffs' Counterclaim.

```
_____/s/_____
James W. Davidson
```

SPELLMIRE & SOMMER
77 W. Wacker Drive, Suite 4800
Chicago, Illinois 60601
(312) 606-8721

JKB/cic/326077                                                                          8190-1

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

BEN GORDON, G7 DEVELOPMENT, INC. and )
BG4, INC., )
      )
           Plaintiffs, )
      ) No. 07 C 6807
v. )
      ) Judge Kocoras
VITALIS PARTNERS, LLC; LARRY HARMON )
& ASSOCIATES, P.A.; KCD DEVELOPMENT, ) Magistrate Judge Ashman
CO.; LARRY HARMON and KENNY CRUZ, )
      )
           Defendants. )

## DEFENDANTS' ANSWER AND COUNTERCLAIMS TO PLAINTIFFS' AMENDED COMPLAINT

Defendants, Vitalis Partners, LLC, Larry Harmon & Associates, P.A., KC Development Co., Larry Harmon and Kenny Cruz, by and through their attorneys, Tressler, Soderstrom, Maloney & Priess, LLP, hereby submit their Answer and Counterclaims to Plaintiffs' Amended Complaint.

## ANSWER

## INTRODUCTION

1.     Ben Gordon, a professional basketball player for the Chicago Bulls, seeks recovery from his previous financial advisors and consultants who breached Mr. Gordon's trust and confidence by using his money for their advantage and by improperly taking a percentage of Mr. Gordon's income as a fee for services despite Mr. Gordon never agreeing to and expressing concern as to such an arrangement. Mr. Gordon's advisors, who were to be paid a set monthly fee to act as his trusted financial advisors and have control over his funds and bank accounts, unilaterally began charging Mr. Gordon an excessive fee amounting to 1.5% of Mr. Gordon's total income. Further, Mr. Gordon's advisors used their position of trust to induce Mr. Gordon to apparently invest $1,000,000 in a real estate deal, but in reality his advisors used the money to acquire *their own* interest in this real estate and drew up a Promissory Note ("the Note") wherein the Defendants promised to re-pay the $1,000,000 they borrowed from Mr. Gordon to gain an interest in the real estate as well as interest at a rate of 17.5%. When Mr. Gordon discovered these indiscretions and demanded the repayment of his money, rather than simply paying back the money and agreeing to sever ties, his advisors refused to pay back the $1,000,000.



EXHIBIT

1

**ANSWER:**    Defendants deny the allegations contained in Paragraph 1 of Plaintiffs' Amended Complaint.

## PARTIES

2.    Ben Gordon is an individual and a resident of Cook County, Illinois.  Mr. Gordon makes his living as a professional basketball player and is employed by the Chicago Bulls.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 2 of Plaintiffs' Amended Complaint.

3.    BG4 Inc. ("BG4") is a Delaware corporation.  Ben Gordon is the sole shareholder and President of BG4.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 3 of Plaintiffs' Amended Complaint.

4.    G7 Development, Inc. ("G7") is a Delaware corporation.  Ben Gordon is the sole shareholder and President of G7.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 4 of Plaintiffs' Amended Complaint.

5.    Ben Gordon, BG4 and G7 are sometimes collectively referred to as Mr. Gordon.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of Plaintiff's Amended Complaint.

6.    Vitalis Partners, LLC ("Vitalis") is a limited liability company organized under the laws of Delaware and its office is located at 2209 Plaza Drive, Suite 100, Rocklin California 95765.  Vitalis' partners are Larry Harmon & Associates, P.A. and KC Development Co., LLC.  Its shareholders are Larry Harmon and Kenny Cruz.

**ANSWER:**    Defendants deny the allegation as to Vitalis' address, and admit the remaining allegations contained in Paragraph 6 of Plaintiffs' Amended Complaint.

7.    Larry Harmon & Associates, P.A. is a California corporation and its office is located at 2209 Plaza Drive, Suite 100, Rocklin California 95765.

2

**ANSWER:** Defendants deny the allegation as to Larry Harmon & Associates, P.A.'s address, and admit the remaining allegations contained in Paragraph 7 of Plaintiffs' Amended Complaint.

8.     KC Development Co., LLC ("KC") is a limited liability company with its principal place of business in California.

**ANSWER:** Defendants admit the allegations contained in Paragraph 8 of Plaintiffs' Amended Complaint.

9.     Larry Harmon is an individual and a resident of the state of California.

**ANSWER:** Defendants admit the allegations contained in Paragraph 9 of Plaintiffs' Amended Complaint.

10.     Kenny Cruz is an individual and a resident of the state of California.

**ANSWER:** Defendants admit the allegations contained in Paragraph 10 of Plaintiffs' Amended Complaint.

## THE CONSULTING AGREEMENT

11.     On May 17, 2004 Ben Gordon executed an agreement drafted by Larry Harmon & Associates where in Larry Harmon and Larry Harmon & Associates (sometimes collectively referred to as "the Harmon Defendants") would act as his financial advisors and consultants and would specifically "provide detailed financial and tax consulting services for the duration of your playing career with the National Basketball Association ("NBA")."   (The "Consulting Agreement," attached as Exhibit A).

**ANSWER:** Defendants admit the allegations contained in Paragraph 11 of Plaintiffs' Amended Complaint.

12.     The Consulting Agreement also provides that the Harmon Defendants had the "intent of being involved in every financial decision with [Mr. Gordon] so that we can appropriately gain any tax and/or financial advantages or savings on such expenditure or purchase."

**ANSWER:** Defendants admit the allegations contained in Paragraph 12 of Plaintiffs' Amended Complaint.

13.     The Consulting Agreement provides that during the duration of Mr. Gordon's rookie contract, he was to pay the Harmon Defendants $4,000 per month during his rookie

3

season, $5,000 per month during his second season and $6,000 per month during his third and fourth seasons plus reasonable expenses.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 13 of Plaintiffs' Amended Complaint.

14.    The Consulting Agreement makes no mention of the Harmon Defendants taking a percentage of Mr. Gordon's salary as a fee, but rather provides that after the expiration of the rookie contract, "we will evaluate the amount of work that we have performed on your account and provide you with a new engagement letter at that time."

**ANSWER:**    Defendants admit the allegations contained in Paragraph 14 of Plaintiffs' Amended Complaint.

15.    As a result of the Consulting Agreement and the Harmon Defendants' control over Mr. Gordon's financial affairs, Mr. Gordon's paychecks from the Chicago Bulls were deposited and wired into Mr. Gordon's accounts which were controlled by the Harmon Defendants.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 15 of Plaintiffs' Amended Complaint.

16.    Further, as a result of the Consulting Agreement and the Harmon Defendants' control over Mr. Gordon's financial affairs, Larry Harmon would travel to Chicago, Illinois to discuss certain investment opportunities and Mr. Gordon's fee arrangement with the Harmon Defendants with Mr. Gordon.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 16 of Plaintiffs' Amended Complaint.

## THE PITCH TO INVEST IN A REAL ESTATE DEAL

17.    Sometime in or around August of 2006, Larry Harmon contacted Mr. Gordon and informed Mr. Gordon that he should invest $1,000,000 in a real estate investment that would pay a large dividend after 24 months.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 17 of Plaintiffs' Amended Complaint.

18.    Larry Harmon stated that he was going to invest $1,000,000 of his own money in this real estate deal because the prospects were so promising.

4

**ANSWER:**    Defendants deny the allegations contained in Paragraph 18 of Plaintiffs' Amended Complaint.

19.    On Larry Harmon's advice and suggestion, Mr. Gordon gave his consent for Larry Harmon to investment $1,000,000 in this real estate deal. In order to effectuate Mr. Gordon's $1,000,000 "investment," Larry Harmon convinced Mr. Gordon to allow him to take $750,000 of Mr. Gordon's funds and for Mr. Gordon to borrow the remaining $250,000.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 19 of Plaintiffs' Amended Complaint.

## THE DISCOVERY OF THE HARMON DEFENDANTS' IMPROPER CONDUCT

20.    In or around May of 2006, Larry Harmon contacted Mr. Gordon and indicated that he wanted to discuss changing the fee Mr. Gordon paid for the Harmon Defendants' services from the flat monthly fee to a percentage of Mr. Gordon's income.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 20 of Plaintiffs' Amended Complaint.

21.    Mr. Gordon never agreed either verbally or in writing to a change from the flat monthly fee to a percentage of his overall income as compensation for the Harmon Defendants' services. Rather, Mr. Gordon, on multiple occasions, expressed concerns and reservations about such an arrangement.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 21 of Plaintiffs' Amended Complaint.

22.    In the process of severing his relationship with the Harmon Defendants and transferring his funds to new advisors, it was discovered that rather than invest the $1,000,000 in real estate for the benefit of Mr. Gordon, the Harmon Defendants actually used Mr. Gordon's money to effectuate their own investment in this real estate deal.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 22 of Plaintiffs' Amended Complaint.

23.    In fact, and unbeknownst to Mr. Gordon, the Defendants papered the deal by drawing up a Promissory Note which evidenced Mr. Gordon's "loan" of $1,000,000 to the Harmon Defendants and the other Defendants for their investment in a real estate deal.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 23 of Plaintiffs' Amended Complaint.

24.  This led Mr. Gordon and his current advisors to demand repayment of the $1,000,000 used by the Harmon Defendants to effectuate the Defendants' investment into a real estate deal.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 24 of Plaintiffs' Amended Complaint.

25.  Further, in the process of severing his relationship with the Harmon Defendants and transferring his funds to new advisors, it was discovered that the Harmon Defendants had been charging Mr. Gordon a fee of 1.5% of his income for the services they provided for a number of months, despite failing to receive Mr. Gordon's authorization or consent to do so.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 25 of Plaintiffs' Amended Complaint.

## THE PROMISSORY NOTE

26.  On or about February 12, 2007, the Defendants apparently executed the Promissory Note ("the Note"), which is attached hereto as Exhibit B.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 26 of Plaintiffs' Amended Complaint.

27.  The Note memorializes that the Defendants "borrowed" $1,000,000 from Mr. Gordon and obligates the Defendants to re-pay the principle loan amount as well as interest at a rate of 17.5%.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 27 of Plaintiffs' Amended Complaint.

28.  The Note obligates the Defendants to pay Mr. Gordon $4,167.67 per month by the fifth day of each month as partial payment of the total 17.5% interest due.

**ANSWER:**  Defendants admit the allegations contained in Paragraph 28 of Plaintiffs' Amended Complaint.

29.  The clause entitled **"Default"** provides:

Borrower will be in default if Borrower fails to make any payment within forty five (45) days of its due date. A late charge in the amount of three percent (3 %) of any payment required to be made hereunder shall be imposed on each such payment not received by the Lender within fifteen (15) days after it is due. The late charge is not a penalty, but liquidated damages to defray administrative and related expenses due to such late payment. The late charge shall be immediately due and payment shall by paid by the Borrower to Lender without notice or demand.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 29 of Plaintiffs' Amended Complaint.

30.    The clause entitled "**Expenses**" provides that:

All parties liable for the payment of this Note agree to pay the Lender all costs incurred by it in connection with the collection of this Note. Such costs include, without limitation, fees for the services of counsel and legal assistants (including bankruptcy counsel fees and expenses) employed to collect this Note, whether or not a suit is brought, and whether incurred in connection with collection, trial, appeal or otherwise.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 30 of Plaintiffs' Amended Complaint.

31.    The clause entitled "**Lender's Rights**" provides that:

Upon default, Lender may declare the entire unpaid principle on this Note and all accrued unpaid costs and fees immediately due, without notice, and then Borrower will pay that amount. Upon default, or if this Note is not paid at final maturity, Lender, at its option, may add any unpaid accrued costs and fees to principal and such sum will bear interest therefrom until paid at Eighteen Percent (18%) (the "Default Rate").

**ANSWER:**    Defendants admit the allegations contained in Paragraph 31 of Plaintiffs' Amended Complaint.

## COUNT I – BREACH OF CONTRACT (All DEFENDANTS)

32.    Mr. Gordon re-alleges and incorporates by reference Paragraphs 1 through 31 as and for paragraph 32.

7

**ANSWER:**    Defendants reallege and incorporate by reference their responses to Paragraphs 1 through 31 above as their response to Paragraph 32.

33.    On February 12, 2007, the Defendants executed the Note, thereby contractually binding them to perform all of the obligations expressed in the Note, including the making of monthly payments to Mr. Gordon by the fifth day of each month thereafter in the amount of $4,167.67.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 33 of Plaintiffs' Amended Complaint.

34.    The Defendants failed to make any of the $4,167.67 in a timely manner in accordance with the express terms of the Note, and specifically for the months of March, April, May, June, and July of 2007.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 34 of Plaintiffs' Amended Complaint.

35.    On July 31, 2007 Mr. Gordon's current advisor wrote to Larry Harmon and indicated that the Note was in default and demanded repayment of the entire unpaid $1,000,000 principal balance, all accrued interest, costs and late fees.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 35 of Plaintiffs' Amended Complaint.

36.    At that time, the March, April, May, June and July $4,167.67 interest payments were all over forty-five days delinquent. Accordingly, the Note was in fact is in default in accordance with the Note's Default clause when Mr. Gordon, through his current advisor, exercised his rights under the Lender's Rights Clause.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 36 of Plaintiffs' Amended Complaint.

37.    To date, and despite Mr. Gordon having exercised his rights to declare a default under the Lender's rights clause, the Defendants have refused to return the $1,000,000 principal loan amount to Mr. Gordon.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 37 of Plaintiffs' Amended Complaint.

## COUNT II BREACH OF FIDUCIARY DUTY (HARMON DEFENDANTS)

38.     Mr. Gordon re-alleges and incorporates by reference Paragraphs 1 through 37 as and for paragraph 38.

**ANSWER:**     Defendants reallege and incorporate by reference their responses to Paragraphs 1 through 37 above as their response to Paragraph 38.

39.     At all times pertinent, Mr. Gordon placed his complete trust and confidence in the Harmon Defendants in regards to his financial, investment, tax and business affairs.   In particular, and without limitation:

      a.    The Harmon Defendants had vastly greater business experience than Mr. Gordon;

      b.    The Harmon Defendants had control over Mr. Gordon's monies and accounts;

      c.    Mr. Gordon disclosed complete and confidential personal financial information to the Harmon Defendants;

      d.    Mr. Gordon relied heavily on the Harmon Defendants for advice and assistance in his financial and business affairs;

      e.    Mr. Gordon entrusted the Harmon Defendants to invest purportedly $1,000,000 in a real estate deal based upon the Harmon Defendants' urging; and

      f.    The Harmon Defendants acted as Mr. Gordon's agent in regards to his financial and business affairs.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 39 of Plaintiff's Amended Complaint.

40.     As a result of the trust and confidence reposed by Mr. Gordon, the Harmon Defendants gained influence and superiority over Mr. Gordon in regards to his financial, investment, tax and business affairs.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 40 of Plaintiffs' Amended Complaint.

41.     As a result of said trust and confidence Mr. Gordon placed with the Harmon Defendants and the Harmon Defendants knowledge that Mr. Gordon placed his trust and confidence in them; the Harmon Defendants owed a fiduciary duty to Mr. Gordon to fully disclose and accurately represent all facts relating to Mr. Gordon's finances, investments, taxes and business matters, as well as the facts regarding the fees charged by the Harmon Defendants.

**ANSWER:** Defendants deny the allegations contained in Paragraph 41 of Plaintiff's Amended Complaint.

42.    The Harmon Defendants further owed to Mr. Gordon a duty to act in Mr. Gordon's best interest and with good faith, loyalty and trust.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42 of Plaintiff's Amended Complaint.

43.    The Harmon Defendants breached said fiduciary duties owed to Mr. Gordon in one or more of the following respects:

a. The Harmon Defendants charged Mr. Gordon an excessive fee amounting to 1.5% of his income without obtaining his authorization or consent;

b. The Harmon Defendants charged Mr. Gordon a fee amounting to 1.5% of his income despite Mr. Gordon's execution of the Consulting Agreement which set only a monthly fee to be paid to the Harmon Defendants;

c. The Harmon Defendants unilaterally changed their fee structure from a set monthly amount to a percentage of Mr. Gordon's overall income;

d. The Harmon Defendants failed to disclose the true nature of the use of Mr. Gordon's $1,000,000 investment in the real estate deal;

e. The Harmon Defendants used $1,000,000 of Mr. Gordon's money to obtain their own interest in a real estate deal;

f. The Harmon Defendants misrepresented to Mr. Gordon the actual use of the $1,000,000 that was purportedly to be used for Mr. Gordon's acquiring an interest in real estate; and

g. The Harmon Defendants refused to return the $1,000,000 principle loan amount to Mr. Gordon despite being in default under the Promissory Note which they had drafted.

**ANSWER:** Defendants deny the allegations contained in Paragraph 43 of Plaintiffs' Amended Complaint.

44.    One or more of the above wrongful acts or omissions and breaches of fiduciary duties committed by the Harmon Defendants was a direct and proximate cause of the injuries described herein and suffered by Mr. Gordon.

10

**ANSWER:** Defendants deny the allegations contained in Paragraph 44 of Plaintiffs' Amended Complaint.

45. But for the wrongful acts or omissions and breaches of fiduciary duty committed by Harmon Defendants, Mr. Gordon would not have agreed to allow the Harmon Defendants to use $1,000,000 of his funds to purportedly gain an interest in a real estate deal; would not have been charged an excessive fee; and would not have unknowingly paid to the Harmon Defendants a percentage of his total income.

**ANSWER:** Defendants deny the allegations contained in Paragraph 45 of Plaintiffs' Amended Complaint.

## AFFIRMATIVE DEFENSES

1. Plaintiffs' claims are barred by the doctrine of acquiescence.

2. Plaintiffs' claims are barred by the doctrine of waiver.

3. Plaintiffs' claims are barred by the doctrine of estoppel.

4. Plaintiffs' claims are barred by the doctrine of laches.

5. Plaintiffs' claims are barred because Defendants had the legal right to act in the manner that they did.

6. Plaintiff's claims are barred by Plaintiffs' failure to mitigate their alleged damages.

WHEREFORE, Defendants, Vitalis Partners, LLC, Larry Harmon & Associates, P.A., KC Developments, LLC, Larry Harmon and Kenny Cruz respectfully request this Court enter judgment in their favor and against Plaintiffs, and that Defendants be awarded their attorneys' fees, costs and for such further relief that this Court deems just and appropriate.

## COUNTERCLAIMS

Counter-Plaintiffs, Larry Harmon & Associates, P.A. and Larry Harmon, by and through their attorneys, Tressler, Soderstrom, Maloney & Priess, LLP, for their Counterclaims to Plaintiff's Amended Complaint against Counter-Defendant, Ben Gordon, state as follows:

## PARTIES

1.      Counter-Plaintiff Larry Harmon & Associates, P.A. ("LHA") is a California corporation and its office is located at 2250 Douglas Blvd, Suite 160, Roseville, CA 95661.

2.      Counter-Plaintiff Larry Harmon ("Harmon") is an individual residing in California.

3.      Counter-Defendant Ben Gordon ("Gordon") is an individual and resident of Cook County, Illinois.  Gordon makes his living as a professional basketball player and is employed by the Chicago Bulls.

4.      Jurisdiction is proper under 28 U.S.C. § 1367 because the claims arise out of the same facts and nucleus of events as the Complaint in this matter.

## COUNT I – BREACH OF CONTRACT

5.      Counter-Plaintiff LHA realleges Paragraphs 1-4 above as fully set forth herein.

6.      On May 17, 2004 Gordon entered into an agreement ("the Agreement") providing that LHA would act as his financial advisors and consultants for the duration of his playing career with the National Basketball Association ("NBA").

7.      The Agreement provides that during the duration of Gordon's rookie contract, he was to pay LHA $4,000 per month during his rookie season, $5,000 per month during his second season and $6,000 per month during his third and fourth seasons plus reasonable expenses. Subsequently, in 2006 LHA and Gordon agreed that instead of paying LHA a flat monthly fee, Gordon would pay LHA a fee amounting to 1.5% of his total income for its services.

8.      LHA has fully performed any and all of its obligations, including any conditions precedent, under the Agreement.

Case 1:07-cv-06807   Document 48   Filed 06/13/2008   Page 28 of 32

9.      In 2007 Gordon purported to terminate LHA's services.  However, as Gordon remained at that time an active player in the NBA, Gordon had no right to terminate LHA's services.

10.     Gordon's purported termination of LHA's services constituted a material breach of the Agreement.

11.     As a direct and proximate result of Gordon's breach of the Agreement, LHA has been damaged.

## COUNT II – DEFAMATION

12.     Counter-Plaintiffs reallege Paragraphs 1-11 above as fully set forth herein.

13.     LHA is a tax, accounting and financial services firm specializing in providing accounting and financial services for professional athletes and entertainers.  Harmon is a principal of LHA.  For many years, LHA and Harmon have provided services to professional athletes and entertainers in the United States.  In connection with this long-standing service, LHA and Harmon have developed extensive and valuable good will in their name and established an outstanding reputation in their field.

14.     LHA entered into an agreement with Gordon to act as its financial advisor.

15.     In accordance with that agreement, LHA performed its obligations and provided Gordon with the contracted for services.

16.     In 2007, Gordon purported to terminate LHA's services and filed this lawsuit against LHA, accusing LHA of numerous acts of malfeasance, along with claims for breach of contract and breach of fiduciary duty.

17.     Upon information and belief, Gordon communicated the allegations of his Complaint with third parties.

18.     These statements were false.

19.     These statements are not capable of an innocent construction and constitute defamation *per se* because they impute that LHA and Harmon are unable to perform or lack integrity in performing their duties, and they impute that LHA and Harmon lack ability in their profession.

20.     Gordon's defamatory false statements of fact have actually and proximately caused injury to LHA and Harmon and their reputation such that they lower LHA and Harmon in the eyes of the community and deter third parties from associating with them.

21.     LHA and Harmon have sustained substantial damages as the result of Gordon's publication of the foregoing defamatory statements, including but not limited to a significant decrease in business since the statements were made.

22.     The foregoing defamatory statements were made by Gordon with the knowledge of their falsity and with actual malice, so to justify an award of punitive damages.

## COUNT III – COMMERCIAL DISPARAGEMENT

23.     Counter-Plaintiffs reallege Paragraphs 1-22 above as fully set forth herein.

24.     The above-identified statements, in addition to impugning the integrity of LHA and Harmon, simultaneously demise and disparage the quality of the services offered by LHA and Harmon.

25.     Gordon's disparaging false statements of fact have actually and proximately caused injury to LHA and Harmon by diminishing the reputation of quality of LHA and Harmon's services and discouraged third parties from purchasing them.

14

26.     LHA and Harmon have sustained substantial damages as a result of Gordon's publication of the foregoing disparaging statements, including but not limited to a substantial decrease in business since the statements were made.

27.     The foregoing disparaging statements were made by Gordon with the knowledge of their falsity and with actual malice so to justify an award of punitive damages.

## COUNT IV – TORTIOUS INTERFERENCE
## WITH PROSPECTIVE BUSINESS ADVANTAGE

28.     Counter-Plaintiffs reallege Paragraphs 1-27 above as fully set forth herein.

29.     LHA and Harmon had a reasonable expectation of entering into valid business relationships with clients, primarily athletes in the United States.

30.     As an athlete who used LHA and Harmon's services, Gordon had knowledge of this reasonable expectancy on the part of LHA and Harmon.

31.     Through his disparaging and defamatory publications that were designed to reach prospective clients of LHA and Harmon, Gordon has intentionally and unjustifiably interfered with LHA and Harmon's legitimate expectancy and prevented such expectancy from ripening into valid business relationships.

32.     As a result of Gordon's willful and wanton conduct detailed above, LHA and Harmon have suffered damage resulting from this interference, including but not limited to a decrease in business since the statements were made.

WHEREFORE, Counter-Plaintiffs, Larry Harmon & Associates, P.A. and Larry Harmon, respectfully request this Court enter judgment in their favor and against Counter-Defendant Ben Gordon in an amount to be proved at trial in excess of $5,000,000, punitive damages in excess of $10,000,000 and that they be awarded their attorneys' fees and costs and for such further relief that this Court deems just and appropriate.

15

## JURY DEMAND

Defendants/Counter-Plaintiffs demand trial by jury as to all claims raised in Complaint and the Counterclaim.

VITALIS PARTNERS, LLC, LARRY HARMON & ASSOCIATES, P.A., KC DEVELOPMENT COMPANY, LLC, LARRY HARMON and KENNY CRUZ

By:    /s/James K. Borcia
One of Their Attorneys

James K. Borcia
David O. Yuen
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6399
(312) 627-4000

16

## UNITED STATED DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| BEN GORDON, G7, INC. and BG4, INC.,     ) | |
|     ) | |
| Plaintiffs,     ) | |
|     ) | |
| v.     ) | No. 07 C 6807 |
|     ) | |
| VITALIS PARTNERS, LLC; LARRY HARMON     ) | Judge Kocoras |
| & ASSOCIATES, P.A.; KCD DEVELOPMENTS,     ) | |
| LLC; LARRY HARMON and KENNY CRUZ,     ) | Magistrate Judge Ashman |
|     ) | |
| Defendants.     ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2008, I electronically filed **Defendants' Answer to Plaintiffs' Amended Complaint** with the Clerk of Court using the CM/ECF system, which will send notification of such filings(s) to the following:

James Davidson
Spellmire & Sommer
77 West Wacker Drive
Chicago, IL 60601

VITALIS PARTNERS, LLC, LARRY HARMON &
ASSOCIATES, P.A., KC DEVELOPMENT COMPANY,
LLC, LARRY HARMON and KENNY CRUZ

By:     /s/James K. Borcia
        One of Their Attorneys

James K. Borcia
David O. Yuen
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6399
(312) 627-4000