IN THE UNTIED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BEN GORDON, G7 DEVELOPMENT, INC., and BG4, INC. <br><br> Plaintiff, <br><br> vs. <br><br> VITALIS PARTNERS, LLC; LARRY HARMON & ASSOCIATES, P.A.; KC DEVELOPMENT, CO., LLC; LARRY HARMON; and KENNY CRUZ <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  No. 07 C 6807 |

## COUNTER-DEFENDANT'S REPLY IN SUPPORT OF HIS MOTIONS TO DISMISS COUNTER-PLAINTIFFS' COUNTERCLAIMS

Counter-Defendant, BEN GORDON ("Gordon"), through his attorneys, SPELLMIRE & SOMMER, submits this Reply brief in support of his motion to dismiss Counter-Plaintiffs Larry Harmon and Larry Harmon & Associates, P.A.'s (collectively "Harmon") Counterclaims.

### I. INTORDUCTION

Harmons' unpersuasive Response briefs to Gordon's Motions to Dismiss all counts of Harmon's Counterclaim further illustrate that these claims have no merit and are simply retaliation for Gordon filing his lawsuit against Harmon.[1] Gordon filed this lawsuit for the purpose of getting back $1,000,000 that he placed in the hands of Harmon to invest in a real estate development. The fact that Harmon owes Gordon this money is not in dispute. Despite this Court's suggestion in open court, Gordon did not assert a cause of action for fraud against Harmon because it was his desire to keep this litigation above-board in the hopes of quickly

---

[1] Gordon originally filed a Motion to Dismiss Count I of the counterclaim for breach of contract. The issue was briefed and then, subsequently, Harmon without leave of Court added three new counts for Defamation, Commercial Disparagement and Tortious Interference which were the subject of a second motion to dismiss. Gordon addresses all four counts in this Reply brief.

retrieving his $1,000,000 and making a clean break with Harmon. After being lead-on for months that the Defendants wanted the same, Gordon unfortunately finds himself responding to these baseless claims. This Court should take note of the extreme degree to which these claims are insufficiently pled and unsupported on both the face of the pleading and in the Response briefs to the motions to dismiss, and dismiss all of these counts with prejudice.

### I.   HARMON HAS NOT AND CANNOT STATE A CLAIM AGAINST GORDON FOR BREACH OF CONTRACT.

In their Response to the Motion to Dismiss the contract claim, Harmon recognizes that settled law establishes that any clause in the Consulting Agreement that Harmon included which would have in any way prohibited Gordon's right to terminate Harmon is simply not enforceable. Yet, Harmon maintains that although the <u>only</u> allegation of breach against Gordon is that "Gordon had no right to terminate [Harmons'] services," they can still maintain an action as pled for breach of contract. This position is contrary to settled law.

Harmon relies upon inapplicable real estate agent and employer-employee or sales/marketing agent cases to support their position. For example, Harmon heavily relies upon the *Kenilworth Realty Company* case. However, that case addressed a situation that is unique to the real estate context where the seller tried to terminate the agent after the agent had found a buyer prior to termination. *Kenilworth Realty Co. v. Sandquist*, 56 Ill.App.3d 78 (1977). The defendant entered into an exclusive listing real estate agreement wherein the real estate agent had the authority to sell the defendants' property for a commission fee. Prior to the time the Defendant attempted to terminate the real estate agency contract, the plaintiff procured a buyer who was willing to pay the full asking price. The defendant then attempted to terminate the real estate agent. However, the court held that because the real estate company had produced a buyer who was "ready, willing and able" to purchase the property prior to the time that the defendant

attempted to terminate the exclusive real estate contract, the real estate agent was owed the 5% sales commission. *Id.* at 85-87. This case is obviously nothing like the case at bar and is simply not applicable.

Harmon also misguidedly relies upon language in cases where the alleged agents sought preliminary injunctions preventing the termination of the agency relationships in employee or sales/marketing agent situations. *See, Apollo Technologies Corp. v. Centrosphere Technologies,* 805 F.Supp. 1157 (D.N.J. 1992); *Woolley v. Embassy Suites, Inc.,* 227 Cal.App.3d 1520, 1529 (1st Dist. 1991). In these cases, the courts rejected the agents' position that they could not be terminated and held that <u>the principal had the authority to terminate the agent despite any alleged contractual limitations</u>. *Id.* These cases then stated that the terminated agent or employee may be able to sustain some sort of action at law against the principal such as a wrongful termination claim. Simply put, these cases logically suggest that the terminated sales agent or employee might have a claim for such damages as previously earned commissions. *Id.* Again, these cases in no way support the position that Harmon can maintain an action against Gordon under these circumstances.

The best analogy to the situation presented here is the common instance where a client terminates the relationship with his lawyer; because like the lawyer-client relationship, the financial manager-client relationship is the type of service-oriented agency relationship where the client must place full trust and confidence in the fiduciary. In the lawyer-client context, like as with other agency relationships, courts have held that although the client has the right to terminate the attorney no matter whether the contract has any prohibitive language, the attorney may be entitled to recover the reasonable value of the <u>previous</u> services rendered. *See e.g. Fracasse v. Ray Raka Brent,* 6 Cal.3d 784 (Cal. 1972). For example, in *Fracasse,* the court held

that the client had the right to terminate his attorney even though the contract attempted to prevent such a termination. The court reasoned that it would be unjust to prevent the client from terminating the fiduciary due to the faith and trust a client must place in his lawyer. *Id.* at 790-791. However, the court did provide the terminated fiduciary with an avenue of recourse under a contract or quasi-contract theory by holding that the terminated fiduciary could attempt to receive "the reasonable value of his services rendered to the time of discharge." *Id.* at 792.

Similarly, here, the only hypothetical claim for damages under a contract theory that Harmon could ever attempt to assert against Gordon would be based upon allegations that Gordon owed Harmon money for <u>past services already rendered</u>. However, all parties know that Harmon was paid by Gordon through the date that Gordon terminated the relationship. <u>Harmon does not even allege to the contrary</u>. Accordingly, Harmon cannot base a breach of contract claim on the allegation that Gordon had no right to terminate the relationship. Moreover, Harmon has no other conceivable contract claim against Gordon because Harmon has been fully paid for all past services rendered. Accordingly, the contract count must be dismissed with prejudice.

II. **HARMONS' RESPONSE REVEALS THAT THE DEFAMATION, COMMERCIAL DISPARAGEMENT AND TORTIOUS INTERFERENCE CLAIMS ARE BARRED BY THE UNCONDITIONAL LITIGATION PRIVILEGE.**

Harmons' Response brief to the Motion to Dismiss the Defamation, Commercial Disparagement and Tortious Interference claims reveals that Harmon believes they can assert these claims simply on the basis of alleging that Gordon's complaint allegedly contains some untrue allegations. Specifically, Harmon argues that they have sufficiently pled the existence of a defamatory statement because "Harmon alleges that Gordon made false and defamatory

4

statements about Harmon *in his complaint* and to third parties." (Response to Counts II-IV, pg. 3). (Emphasis added).

Harmons' specious position is fatally flawed as Federal, Illinois and California law make clear that a plaintiff cannot be subjected to tort claims based upon information contained in a complaint or other pleading because the litigant enjoys the protection of an unconditional litigation privilege. *See e.g., NSB Technologies, Inc. v. Specialty Direct Marketing, Inc.*, 2004 WL 1918708 (N.D. Ill.) (Discussing unconditional litigation privilege under Federal, California and Illinois law). Further, under a broad range of circumstances, statements made that relate to the litigation and are made to some third-parties are also privileged. *Id.* at *4.

In *NSB Technologies, Inc.*, the Court granted a motion to dismiss a defamation counterclaim based upon the litigation privilege and explained the unconditional litigation privilege and the policy behind it as follows:

> The Court finds that it is appropriate to recognize a federal litigation privilege in this case. The policy behind allowing a litigation privilege is the same in federal courts as it is in California and Illinois; it provides litigants with unfettered access to courts, and the opportunity to fully litigate disputes, without fear of facing subsequent derivative tort actions. *Id.* at *4.

Importantly, both California and Illinois courts have specifically held that the filing of a complaint cannot subject the plaintiff to a derivative tort claim regardless of whether the allegations are later adjudicated to be false. *Asia Inv. Co., Ltd. v. Borowski*, 133 Cal.App.3d 832 (Cal. App. 1982); *Defend v. Lascelles*, 149 Ill.App.3d 630 (Ill.App. 1986). Further, the litigation privilege, bars not only defamation claims, but also other tort claims including commercial disparagement and tortious interference claims. *Lexecon, Inc. v. Milberg, Weiss, Bershad, Hayes & Lerach*, 1998 WL 808986, *6-*7 (N.D. Ill. 1998).

Here, Harmon simply cannot state a claim for defamation, tortious interference or commercial disparagement based upon the position revealed in their Response that the filing of the Complaint somehow constituted the making of defamatory statements. Further, if Gordon did communicate any of the allegations of wrongdoing in his complaint to third-parties (which he denies), those too would be protected by the litigation privilege as long as they bear some rationale relationship to the litigation. *NSB Technologies, Inc.*, at *4. Accordingly, Harmons' claims for Defamation, Commercial Disparagement and Tortious Interference must be dismissed.

### III. HARMONS' INABILITY TO IDENTIFY A DEFAMATORY STATEMENT OR TO WHOM A DEFAMATORY STATEMENT WAS MADE MANDATES DISMISSAL.

Rather than recite the abundant law cited in Gordon's original memorandum in support of this motion which establishes that Harmon has failed to state a claim against Gordon because they have not sufficiently alleged a defamatory statement or identify to whom a statement was made; Gordon instead applies to this Courts' good judgment and understanding of what constitutes a proper pleading. Harmon simply has not, and more importantly, cannot identify a single alleged defamatory statement or even one individual to whom an alleged defamatory statement was made, and must not be allowed to proceed with these unsupported claims in light of these failures.

Harmon asks this Court to simply overlook the facts that they cannot identify an alleged defamatory statement or identify a single individual to whom such a statement was made by stating, without support, that they are not required to do so. However, Courts have adopted requirements such as: (1) the *in haec verba* defamatory statement pleading requirement; (2) the requirement that a plaintiff identify to whom an alleged defamatory or disparaging comment was made rather than simply allege that a statement was made to, "third persons and the community;"

6

and (3) the requirement that a tortious interference plaintiff identify an existing relationship that was interfered with, for the very purpose of dispensing with unfounded claims. *See, Vantassell-Martin v. Nelson,* 741 F.Supp. 698 N.D. Ill. 1990); *Keisler v. Lake County Superior Court,* 2005 WL 3370006 (N.D. Cal 2005); and *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.* 479 F.3d 1099 (9th Dist. 2007). This Court must dismiss these unfounded claims and prevent Harmon from ignoring these basic pleading requirements.

On a very basic common sense level one has to wonder why, if Harmon were aware of one single specific alleged defamatory statement or the identity of an individual to whom such an alleged statement was made, are these facts not so stated in their pleading or in response to this well-grounded Motion to Dismiss? Gordon asserts that there is a very simple explanation for Harmons' failures: This entire Counterclaim against Gordon is a shot in the dark and Harmon has no good-faith belief that Gordon made an allegedly defamatory statement, let alone do they have any clue as to the identity of an individual to whom Gordon may have made such a statement. This Court must accept the Defamation, Commercial Disparagement and Tortious Interference claims for what they are dismiss these groundless claims with prejudice.

IV. **HARMON HAS FAILED TO PLEAD DAMAGES WITH PARTICULARITY SUFFICIENT TO STATE A CLAIM FOR COMMERCIAL DISPARAGEMENT.**

In their Response brief, Harmon does not deny that under California law, a plaintiff must plead special damages with specificity in accordance with Fed.R.Civ.P. 9(g) to properly plead a claim for Commercial Disparagement. *Isuzu Motors Limited v. Consumers Union of United States,* 12 F.Supp.2d 1035, 1047 (C.D. Cal. 1998). However, in the counterclaim, Harmons' lone allegation of damages contained in the Commercial Disparagement count is that Harmon

has endured a "substantial decrease in business since the [disparaging] statements were made." This is woefully insufficient.

In *Isuzu Motors,* the Court outlined what a plaintiff must allege to satisfy the requirements of pleading special damages under Rule 9(g) for a California law commercial disparagement claim where the defendant is claiming a loss of business since the disparaging statements were made. The court instructed that the plaintiff should have:

> alleged facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication and facts showing that the losses were the natural and probable result of the publications. *Isuzu Motors,* at 1047.

Under this standard of specificity, Harmons' lone allegation that they have suffered a "decrease in business" simply fails to state a claim and dismissal is warranted.

Curiously, Harmon cites *Brown & Williamson Tobacco Corp. v. Jackson,* 714 F.2d 262, 270 (7th Cir. 1983) for the proposition that they have sufficiently pled special damages under Rule 9(g). However, in *Brown & Williamson,* the court dismissed the product disparagement claim <u>because the plaintiff failed to sufficiently plead special damages under Rule 9(g)</u>. Importantly, the plaintiff's allegations of damages in *Brown & Williamson* were <u>much more detailed</u> than Harmons' damages claim as the plaintiff alleged:

> Brown & Williamson has been injured and is likely to continue to suffer injury as a result of the natural tendency of the defendants' false and malicious statements to undermine Brown & Williamson's general reputation for honesty and to decrease its sales and good will by falsely portraying the manufacturer Viceroy cigarettes as immoral, degenerate and criminal. In addition, the defendants' continuing rebroadcast of the false and malicious Cigarette Advertising Broadcast threatens to destroy or nearly destroy the value of Brown & Williamson's investment in Viceroy advertising between 1978 and 1981. *Id.* at 270.

The *Brown and Williamson* court held that these allegations of damages did not satisfy the specificity requirements and 9(g) and dismissed the count stating that the Rule "enables

8

groundless per quod defamation claims to be dismissed at an early stage of the litigation." *Id.* Accordingly, not only does the *Brown & Williamson* case provide Harmon no comfort, the holding, like the *Isuzu Motors* holding, mandates dismissal.

### V. HARMON CANNOT PLEAD THE REQUIRED ELEMENTS OF A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECITIVE ECONOMIC ADVANTAGE UNDER CALIFORNIA LAW.

In their pleading and Response brief, Harmon attempts to quote the buzz words for a tortious interference claim. However, their own admissions and lack of substantive arguments establish that they cannot state a claim. Specifically, Harmon has neither pled nor argued that Gordon interfered with an existing relationship, nor can Harmon establish that the "independently wrongful act" requirement has been met.

First, the California Supreme Court has made clear that the plaintiff must identify an <u>existing</u> economic relationship with which the defendant interferes. *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003). Specifically, the California Supreme Court held that:

> First, a plaintiff that wishes to state a cause of action for this tort must allege the existence of an economic relationship with some third party that contains the probability of future economic benefit to the plaintiff. This tort protects the expectation that the relationship will yield the desired benefit, not necessarily the more speculative expectation that a potentially beneficial relationship will arise. *Id.* at 957.

In Harmons' Response, they inaccurately argue that they can satisfy the "existing relationship" requirement by alleging that they have existing relationships with professional athletes and that they have the expectation to develop future relationships with <u>different</u> professional athletes. Specifically, Harmon argues that "Gordon had knowledge of Harmons' <u>potential relationships</u> with other professional athletes." Further, Harmon argues that they would "continue to develop and obtain <u>future business relationships.</u>" Accordingly, it is clear that

9

Harmon has missed the point. Harmon must allege that Gordon interfered with an existing relationship. This Harmon has not and cannot do. Accordingly, the Tortious Interference claim must be dismissed.

Further, Harmon cannot satisfy the independently wrongful act requirement. Under California law, a plaintiff seeking to recover for tortious interference with prospective economic relations must plead and prove that the defendant's interference was wrongful by some measure beyond the alleged interference itself. *CRST Van Expedited, Inc.*, at 1108. The California Supreme Court has referred to this element as the "independently wrongful act" requirement, and has held that this is a substantive requirement. *Korea Supply*, at 958. For example, the *Korea Supply* Court held that allegations of bribery and sexual favors were sufficient because the acts would amount to a violation of the Foreign Corruption Practices Act. *Id.* Subsequently, a California appellate court held that merely alleging violations of state trade rules was insufficient to satisfy the independently wrongful act requirement. *Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.* 138 Cal. App 4th 1215, 1220-21 (Cal. App. 2006). *See also, CRST Expedited Inc.*, 1108-09 (holding that alleged violations of California Unfair Competition Law (UCL) were sufficient to satisfy the requirement).

In Harmons' Response brief, they nearly ignore this significant and substantive point and simply conclude in one sentence, without citing a case or attempting to explain the *Korea Supply, CRST Expedited, Inc.* and *Stevenson Real Estate Services, Inc.* holdings, that they have satisfied the independently wrongful act pleading requirement because they "sufficiently alleged that Gordon made defaming and commercially disparaging statements about Harmon." This is clearly insufficient under California law, as is made clear in the three cases cited herein.

Accordingly, Harmon cannot satisfy the independently wrongful act requirement and the Tortious Interference count must be dismissed.

## VI.   CONCLUSION

Based upon the foregoing arguments and cited authorities and those contained in Gordon's original memoranda in support of these Motions to Dismiss, Gordon respectfully requests that this Court dismiss with prejudice all Counts of the Counter-Plaintiffs' Counterclaim.

_____/s/_____
James W. Davidson

George W. Spellmire
Lisa M. Sommer
James W. Davidson
SPELLMIRE & SOMMER
77 W. Wacker Drive, Suite 4800
Chicago, Illinois 60601
(312) 606-8721