UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BEN GORDON, G7, INC., and BG4, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> VITALIS PARTNERS, LLC; LARRY HARMON ) <br> & ASSOCIATES, P.A.; KCD DEVELOPMENTS, ) <br> LLC; LARRY HARMON and KENNY CRUZ, ) <br> ) <br> Defendants. ) | 07 C 6807 |

### MEMORANDUM OPINION

Charles P. Kocoras, District Judge:

This matter comes before the court on Counterdefendant Ben Gordon's motion to dismiss the counterclaim of Counterplaintiffs Larry Harmon and Harmon & Associates, P.A. ("LHA") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Gordon's motion is denied as to Counts I-III and granted as to Count IV.

### BACKGROUND

Gordon is a professional basketball player who plays for the Chicago Bulls, a team in the National Basketball Association ("NBA"). He is a citizen of Illinois. Harmon and LHA are citizens of California.

According to the counterclaim, on May 17, 2004, Gordon and LHA executed a consulting arrangement (the "Agreement") that provided that LHA would act as Gordon's financial advisors and consultants for the duration of his NBA career. Gordon terminated LHA's services in 2007, even though he was still playing for the Bulls. Gordon subsequently filed a suit against Harmon, LHA, and three other parties alleging breach of contract and breach of fiduciary duty. Although the suit was originally filed in Illinois state court, Defendants removed the case here on diversity grounds.

Harmon and LHA filed a four-count counterclaim against Gordon alleging breach of contract, defamation, commercial disparagement, and tortious interference with prospective business advantage. In the breach of contract claim, LHA alleges that Gordon was to pay LHA specific fees for a four-year period. For the first year, the fee was $4,000 per month plus out-of-pocket expenses; for the second, $5,000 per month plus out-of-pocket expenses; and for the third and fourth, $6,000 per month plus out-of-pocket expenses. LHA maintains that, in 2006, Gordon agreed to change the fee to 1.5% of his total income rather than the rates set out in the Agreement. LHA alleges that it fully performed all of its obligations under the Agreement, that Gordon breached the Agreement by prematurely terminating the relationship, and, as a result of that breach, LHA sustained significant financial damage.

Count II alleges that Gordon defamed Harmon and LHA by making the allegations set forth in the complaint and communicating them to third parties despite knowing they were false. The commercial disparagement claim incorporates the allegations of Count II but alleges that the statements also disparaged the quality of services offered by Harmon and LHA. Harmon and LHA allege that Gordon's actions have caused a substantial decrease in business.

Finally, in support of the tortious interference claim, Harmon and LHA assert that Gordon's statements interfered with their "legitimate expectancy" of entering into business relationships with prospective clients and prevented those expectancies from becoming valid relationships. The pool of prospective clients consisted primarily of "athletes in the United States."

Gordon now seeks to dismiss all four counts pursuant to Rule 12(b)(6).

## LEGAL STANDARD

Rule 12(b)(6) evaluates the legal sufficiency of a plaintiff's complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A court, in ruling on a motion to dismiss a counterclaim, uses the same standards of review that apply to claims made in the main complaint. *See Cozzi Iron & Metal Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe all allegations of a complaint in

the light most favorable to the plaintiff, and accept as true all well-pled facts and allegations in the complaint. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). To be cognizable, the factual allegations contained within a complaint must raise a claim for relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955, 1965 (2007). A pleading need only convey enough information to allow the defendant to understand the gravamen of the complaint. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999).

With these principles in mind, we now consider Gordon's motion to dismiss.

## DISCUSSION

Before turning to the substance of the arguments presented in the instant motion, we must briefly examine the question of which state's law provides the rules of decision for the issues presented in Gordon's motion.

With respect to Count I, the parties have relied upon both Illinois and California law, apparently because they perceive no difference in treatment by these two states of the legal issues presented in the breach of contract claim. If all interested jurisdictions apply the same legal rule to any issue, a federal court should apply to that issue the law with which it is most familiar, usually that of the forum state. *See Int'l Administrators, Inc. v. Life Ins. Co. of North America*, 753 F.2d 1373, 1376 n.4 (7th Cir. 1985).

Moreover, in the absence of a disagreement on which state's law should apply, well-established Seventh Circuit law provides that we refrain from engaging in a choice-of-law analysis. *See*, *e.g.*, *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991). Accordingly, we will apply Illinois substantive law to test the legal sufficiency of LHA's breach of contract claim.

For Counts II, III, and IV, Gordon asserts that California law should apply. Harmon does not contest that proposition; in fact, he supports his arguments with California cases as well. Thus, it would appear that the parties agree on the application of California law to Counts II-IV, obviating further inquiry into the matter by this court. Even if that were not the case, the fact that Harmon and LHA chose not to oppose the application of California law when the issue was squarely presented operates as a waiver of their ability to advance that argument within the context of the motion to dismiss. *See GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1115 n.6 (7th Cir. 1995).

**A. Count I: Breach of Contract**

Count I alleges a claim for breach of contract against Gordon for his termination of the Agreement. In support of dismissal, Gordon argues that his actions could not constitute a breach of contract as a matter of law because of the nature of the parties' relationship. He equates the relationship he had with Harmon and LHA to that between

an attorney and a client. Under Illinois law, a client may fire an attorney at any time with or without cause, and such action is not a breach of contract even if the relationship between the two parties is contractual. *Rhoades v. Norfolk & Western Railway Co.*, 399 N.E.2d 969, 988 (Ill. 1979). The parties have not supplied, nor has our research revealed, any Illinois cases addressing this matter in the context of financial advisors, let alone any stating the proposition Gordon advances as a matter of law for that type of employment setting. It is inappropriate for us to work such an expansion of state contract law in a matter arising at the pleadings stage, assuming that it is appropriate at all. *See Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1101 (7th Cir. 2008) (noting that cases presenting certain issues of state law are appropriate for certification to a state supreme court rather than resolution by a federal court).

LHA alleges that the Agreement constitutes a valid and enforceable contract. According to LHA, Gordon was obligated under the agreement to use LHA as his sole provider of financial advice and consultation throughout his NBA career, whether that lasted one day or 20 years. LHA goes on to assert that it fully performed all of its obligations under the Agreement but that Gordon failed to hold up his end of the deal when he terminated the relationship. LHA purports to have sustained significant financial damage as a result of Gordon's actions. These allegations contain each of the elements of an Illinois breach of contract claim. *See Henderson-Smith & Assoc., Inc. v.*

*Nahamani Family Serv. Ctr., Inc.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001). Accordingly, dismissal of Count I is not warranted under Rule 12(b)(6).

**B.  Counts II and III: Defamation and Commercial Disparagement**

In diversity cases, federal law controls the determination of pleading sufficiency in cases brought in federal court. *See Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 926 (7th Cir. 2003). Because the counterclaim does not contain a cause of action that would be subject to Fed. R. Civ. P. 9, which contains a heightened pleading standard, the familiar notice pleading standard enumerated in Rule 8(a)(2) controls the amount of specificity required for Counts II and III. If these two claims contain a short and plain statement showing that Harmon and LHA's claims for relief go beyond mere speculation, they will survive a 12(b)(6) challenge even if that might not be the case in an analogous examination in state court. A full factual narrative is not necessary to state a cognizable claim. *See Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006).

In California, a defamation claim requires a plaintiff to allege that the defendant intentionally published a statement of fact, which is false, unprivileged, and tends to injure or cause special damages to the plaintiff. *Ringler Associates Inc. v. Maryland Casualty Co.,* 96 Cal. Rptr. 2d 136, 148 (Cal. App. Ct. 2000). Trade libel (the term used in California state law for commercial disparagement) is a closely related cause of action; the difference between them is that, unlike defamation, which concerns injury to

- 7 -

the reputation of a person or business, trade libel involves false disparagement of the quality of goods or services. *Guess, Inc. v. Superior Court*, 176 Cal. App. 3d 473, 479 (Cal. App. Ct. 1986). Harmon and LHA allege that Gordon defamed them and disparaged the quality of their services by communicating the allegations contained in the complaint with third parties. The vast majority of Gordon's attacks on the legal viability of Counts II and III pertain to lack of factual detail within Harmon's allegations. For example, Gordon contends that Harmon and LHA do not specifically set forth the substance of the allegedly defamatory statements, to whom they were made, or what special damages were incurred as a result of their sullied reputations.

Based on the standard set forth above, the sole issue presented in Gordon's challenges to Counts II and III that could warrant relief under the federal pleading requirements is his contention that the allegedly defamatory statements were privileged under California law. If he is correct, that assertion would negate an essential element of these causes of action, namely that the communications be unprivileged. Gordon maintains that Harmon and LHA's Counterclaim should be dismissed because the alleged defamatory statements fall within the litigation privilege, which protects communications made in connection to judicial or quasi-judicial proceedings. *Silberg v. Anderson,* 786 P.2d 365, 369 (Cal. 1990). For the privilege to attach, the communication must be made by the parties to the proceeding or other authorized

participants to achieve legitimate objectives of the litigation. *Id.* The privilege applies to all torts except malicious prosecution. *Id.* at 368.

Gordon argues that the alleged defamatory statements are contained within his complaint, so the litigation privilege applies to bar Harmon and LHA from asserting tort claims based upon them. However, the counterclaim contains allegations that Gordon communicated the allegations to third parties. The privilege does not apply to communications to nonparticipants in the proceeding, which can form the basis of an actionable claim if they are not subject to some other privilege. *Id.* at 373-74. The counterclaim and response to the motion to dismiss can plausibly be read to allege that Gordon communicated the contents of his complaint to third parties who were not participants in this suit. Such communications would not fall within the scope of the litigation privilege. Consequently, Counts II and III state claims upon which relief could be granted, and the motion to dismiss them is therefore denied.

**C.  Count IV: Tortious Interference with Prospective Economic Advantage**

Count IV asserts a claim for tortious interference with prospective business advantage. In California, this tort occurs when a defendant knows of an economic relationship between the plaintiff and a third party, which presents a probable economic benefit to the plaintiff in the future, and intentionally disrupts that relationship to the economic detriment of the plaintiff. *Korea Supply Co. v. Lockheed Martin Corp.*, 63

P.3d 937, 950 (Cal. 2003). It is essential that the economic relationship be preexisting; though the specific benefit interfered with can be unrealized at the time of the interference, the underlying relationship cannot be only in the future. *Roth v. Rhodes*, 30 Cal. Rptr. 2d 706, 715 (Cal. App. Ct. 1994).

As described above, Count IV refers not to future benefits from existing relationships but instead unequivocally states that the relationships Gordon allegedly interfered with were prospective only. They had not ripened from the expectancy stage; consequently, they are insufficient to state a cognizable claim of tortious interference. *See id.* The request for dismissal of this count is thus well-founded, and the motion to dismiss it is granted.

## CONCLUSION

Based on the foregoing, Gordon's motion to dismiss Counts I-III of the counterclaim is denied. The motion is granted with respect to Counts IV.

　　　　　　　　　　　　　　　　　　*Charles P. Kocoras*
　　　　　　　　　　　　　　　　　　Charles P. Kocoras
　　　　　　　　　　　　　　　　　　United States District Judge

Dated:  July 31, 2008