UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BEN GORDON, G7 DEVELOPMENT, INC. and BG4, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | 07 C 6807 |
| VITALIS PARTNERS, LLC; LARRY HARMON & ASSOCIATES, P.A.; KCD DEVELOPMENT, CO.; LARRY HARMON and KENNY CRUZ, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on two motions for summary judgment. In the first, Plaintiffs Ben Gordon; G7 Development, Inc.; and BG4, Inc. (collectively referred to herein as "Gordon") request summary judgment in their favor on Count I of Gordon's complaint. In the second, Defendants Larry Harmon and Larry Harmon & Associates, PA (collectively referred to herein as "LHA") move for summary judgment in their favor on Count II of Gordon's complaint. For the reasons set forth below, both motions are granted.

## BACKGROUND

Gordon is a professional basketball player who played for the Chicago Bulls from 2004 until 2009, when he left the Bulls to play for the Detroit Pistons. Before Gordon

was drafted by the Bulls as a rookie, he engaged LHA as financial advisors and consultants. The engagement letter[1] stated in pertinent part that LHA would provide "services for the duration of [Gordon's] playing career in the National Basketball Association ("NBA")." The letter went on to set forth estimated fees for these services. For the first year of Gordon's anticipated four-year contract with the Bulls, the estimated fees would be $4000 per month, plus out-of-pocket expenses. In the second year, the estimated monthly fee would increase to $5000 plus out-of-pocket expenses. Finally, in the third year and the fourth year (assuming that the team exercised its option to keep Gordon for that year), the fee would go to $6000 per month plus out-of-pocket expenses. The letter reiterated that this schedule was not finalized and that the fee ultimately charged would be "based upon the amount of actual time spent on your account at standard billing rates." After Gordon's rookie contract was completed, LHA would evaluate the amount of work performed on his account and provide Gordon with a new engagement letter.

In May 2006, Harmon informed Gordon that, beginning with the April 2006 invoice, LHA's fees had changed from the previously used flat-fee structure to a percentage-based model, specifically 1.5% of Gordon's annual income. Although

---

[1] The record does not contain any written memorialization of the parties' original arrangement other than the engagement letter.

Gordon did not explicitly agree to the new arrangement, for the next 14 months he paid all invoices Harmon sent, which were calculated at the 1.5% rate. In four of those 14 months, the fee charged using the 1.5% calculation had yielded a fee in excess of the amount that would have been due under the flat-fee system. Gordon did not object to the new fee structure until June 2007. Over that period, the overall fees using the percentage-based calculation were $10,302.53 less than would have been charged using the flat fee amounts.

In February 2007, Defendants Larry Harmon, Kenny Cruz, LHA, KCD Development, LLC ("KCD"), and Vitalis Partners, LLC ("Vitalis") (collectively referred to as "the borrowers") executed a note memorializing, *inter alia*, an obligation to repay $1,350,000 to Gordon. The parties do not agree on the purpose of the loan or the specifics of how it came to pass. However, there is no dispute that Gordon read the promissory note (prepared by the borrowers) and discussed it with another financial advisor before signing and only then authorized that the funds be transferred. Pursuant to the note, all of the borrowers jointly and severally promised to repay Gordon $1,250,000 over a two-year period ($1,000,000 plus 17.5% interest). Full payment was required by February 12, 2009. The contract provided that the borrowers would be in default if they failed to make any payment within 45 days of the payment date provided. For late payments, a late charge of 3% would be applied. The note provided a variety

of other remedies as well. On or shortly after February 12, 2007, Gordon fulfilled all of his obligations under the note when he transferred $1,000,000 of his own funds to the borrowers.

Harmon and Cruz acknowledged that they were obligated to repay the $1,250,000 when the note expired on February 12, 2009. However, that payment was not made.[2]

At some point in 2007, which is not specified in the record, Gordon fired LHA as his advisors. His rookie contract continued into 2008.

In September 2007, Gordon filed suit, alleging breach of contract for failure to pay the note and breach of fiduciary duty in connection with the transaction underlying the note as well as other aspects of the parties' business dealings. LHA subsequently filed a counterclaim for breach of contract. Discovery has been completed and each party now moves for summary judgment on one of the counts of the main complaint.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant in entitled to summary judgment as a matter of

---

[2]Though the borrowers' response to the Local Rule 56.1 statement of facts purports to dispute this fact, there is no evidence offered to support this contention. By operation of the rule, this fact is therefore admitted. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004).

law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States,* 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

With these principles in mind, we turn to the parties' motions.

## DISCUSSION

### I. Gordon's Motion for Summary Judgment

This is Gordon's second motion for summary judgment in his favor on Count I of the complaint. In April 2009, before discovery was completed, he presented a motion with substantially the same legal basis advanced in the presently filed motion. In July, we denied his request without prejudice on the basis that the factual record he supplied in connection with it was not sufficient to permit a reasonable assessment of his request for relief. However, contrary to the assertions made in the response to

Gordon's current motion, we did not render a decision on the merits of Gordon's earlier motion such that consideration of the current motion would be foreclosed.

Gordon now moves for summary judgment on Count I of his complaint, which alleges breach of contract for the nonpayment of the funds due under the terms of the February 2007 note. In order to establish that he is entitled to judgment as a matter of law on this claim, Gordon must show the existence of an enforceable contract, his own satisfactory performance of the obligations imposed on him, and the borrowers' failure to fulfill their corresponding obligations. *Smith v. Jones*, 497 N.E.2d 738, 740 (Ill. 1986). There is a fair degree of controversy between the parties as to the intended purpose of the transferred funds, specifically whether they were intended to be used as part of a real estate investment. While it is clear that some discussions were had about real estate, there exists neither a writing with recorded express terms nor any basis to conclude the parties reached a meeting of the minds on the material terms of any real estate undertaking. The only agreement with regard to the $1,000,000 transfer that was finalized and memorialized to a degree that it could constitute an enforceable legal obligation was the promissory note. Its terms pertain solely to a lender–borrower relationship. The undisputed facts set forth above establish that the parties entered into an enforceable contract when they executed the promissory note. Gordon performed his obligations under the note by transferring the $1,000,000 to the borrowers, who have

not fulfilled their corresponding obligations by making full and timely payments including the amount due on February 12, 2009. As Gordon has satisfied all of the elements of the breach of contract claim, Gordon is entitled to judgment as a matter of law on Count I of the complaint. The note provides for payment of a sum of unpaid principal, 17.5% interest,[3] and a 3% late payment charge. According to the supporting documentation supplied by Gordon, the resulting amount is $1,386,666,67.[4] That amount is consequently awarded to Gordon.

## II. Harmon's Motion for Summary Judgment

Count II of the main complaint states a claim for breach of fiduciary duty against LHA for changing the fee structure from flat fee to percentage-based and for inducing Gordon to transfer the $1,000,000 transferred pursuant to the promissory note. In Illinois, to prevail on a breach of fiduciary duty claim, a plaintiff must show that the defendant owes the plaintiff a fiduciary duty, that the duty was breached, and that the breach proximately caused injury to the plaintiff. *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000). Fiduciary duties can arise as a matter of law or as a consequence of

---

[3]Though Gordon's moving papers state the percentage as 18%, the supporting affidavit used to reach the final numbers gives the interest rate at 17.5%.

[4]Gordon's papers supply two amounts. The separate calculations are necessitated by an ambiguity in the note's language regarding payment. Because the note was drafted by the borrowers, any ambiguity is construed against them. *See Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 368 (Ill. 1998). Accordingly, the higher amount is awarded.

particular factual circumstances. *See Citicorp Sav. of Ill. v. Rucker*, 692 N.E.2d 1319, 1325 (Ill. App. Ct. 1998).

With regard to the first element of the cause of action, the parties do not raise any dispute that LHA served in a fiduciary capacity to Gordon. Accordingly, for purposes of this motion, we will assume without deciding that a fiduciary relationship and the concomitant fiduciary duty existed between Gordon and LHA.

On the second element, however, Harmon presents several arguments in support of his contention that LHA's actions did not breach any duty owed to Gordon. Harmon argues that Gordon's decision to authorize the $1,000,000 transfer to the borrowers was not based on a misunderstanding of the nature of the transaction but on his acquiescence to the terms of the note, which make no mention of any real estate interest. The record shows that Gordon did not transfer the funds until he had received the note, read it, consulted with another financial advisor, and signed it, thereby agreeing to its terms. Based on these facts, we agree that Gordon cannot establish a breach of duty with regard to the execution of the promissory note. The record supports only a conclusion that he read and understood the terms of the note as written, which make no mention of his acquisition of any real estate interest, and agreed to be bound by them. As seen in the discussion regarding Gordon's motion on Count I, the deal Gordon got is the one to which he signed on—a loan. Moreover, Gordon's position as final decisionmaker

with respect to the transfer of funds prevents LHA from being the proximate cause of any damage Gordon may have suffered in conjunction with the transaction. Accordingly, we agree with LHA that they are entitled to judgment as a matter of law on any breach of fiduciary duty claim arising from this transaction.

Harmon next contends that Gordon cannot establish a breach or damages arising from the change in fee structure. Gordon's claim arises from LHA's implementation of the new fee structure before he reviewed and approved the change. Though Gordon did not provide explicit prospective approval, his behavior during the 14 months in which he paid the invoices sent to him that used the new calculation method indicated his assent. In such circumstances, the failure to act equates to an agreement to the change in the first instance. *See Forkin v. Cole*, 548 N.E.2d 795, 807 (Ill. App. Ct. 1989). Furthermore, the record reflects that the fees Gordon paid under the percentage-based fee system were less than what he would have owed if the flat rate structure had stayed in place until June 2007, when he objected to the change. As a result, Gordon cannot show he suffered damages even if we were to conclude that a breach had occurred. Consequently, LHA is entitled to a judgment in their favor on the claim of breach of fiduciary duty.

## III. Counterclaim

The disposition of the two motions discussed above leaves only the counterclaim of LHA for breach of contract for Gordon's termination of LHA as his advisors. This

claim was brought pursuant to the supplementary jurisdiction provided in 28 U.S.C. § 1367. The counterclaim does not make any allegation about the amount in controversy for the claim it describes, so there is no basis to conclude that diversity jurisdiction is present over this claim. Since the granting of summary judgment for the main complaint eliminates all claims over which this court has original jurisdiction, we decline to continue to exercise jurisdiction over the counterclaim. Accordingly, it is dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## CONCLUSION

Based on the foregoing analysis, the motions for summary judgment are granted. The counterclaim is dismissed for lack of jurisdiction.

/s/ Charles P. Kocoras

Charles P. Kocoras
United States District Judge

Dated:     January 27, 2010